UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **RARITAN BAYKEEPER, INC.,** *et al.*, | : | **Civil Action No.: 09-4117 (JAP)(DEA)** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER**  RECEIVED |
| **NL INDUSTRIES, INC.,** *et al.*, | : | |
| | : | JUL - 1 2014 |
| **Defendants.** | : | |
| | : | AT 8:30_____M |

WILLIAM T. WALSH CLERK

**ARPERT, U.S.M.J.:**

This matter comes before the Court on a Motion by Plaintiffs Raritan Baykeeper, Inc., et. al. (collectively, "Raritan") [dkt. no. 293], to compel NL Industries, Inc. and NL Environmental Management Services, Inc. (collectively, "NL") to (1) clarify whether it has withheld documents or failed to search for certain categories of documents on the basis of NL's objections[1]; (2) produce documents responsive to 25 requests which NL contends are not relevant and/or are outside the scope of discovery; and (3) produce e-mails which have not been included in its production, pursuant to Fed. R. Civ. P. 37(a)(4). NL opposed Raritan's Motion [dkt. no. 294] and Raritan filed a reply brief [dkt. no. 296]. In addition, NL filed a Cross-Motion for a Protective Order [dkt. no. 294], which Raritan opposed [dkt. no. 296]. Oral Argument was heard on June 16, 2014 [dkt. no. 299]. For the reasons specified below, Raritan's Motion to Compel [dkt. no. 293] is **DENIED**; NL's Cross-Motion for a Protective Order [dkt. no. 294] is **GRANTED**; and the Court will **STRIKE** Raritan's Supplemental Brief in Support of its Motion to Compel [dkt. no. 298].

**I.    BACKGROUND**

Since the parties are familiar with the facts and procedural history of this dispute, the

---

[1] Raritan has withdrawn part (1). See Pl.'s Reply Br. at p. 33, dkt. no. 296.

Court need not recite them at length. Of relevance to the present Motion, NL operated a titanium dioxide pigment manufacturing facility on a portion of a 440-acre site in Sayreville, New Jersey from approximately 1935 to 1982. See Def.'s Br. at p. 5, dkt. no. 294. In 1988, NL commenced an environmental investigation at the site under what is known as the Industrial Site Recovery Act ("ISRA"), N.J.S.A § 13:1K-11.4, et seq. Id. NL worked with the New Jersey Department of Environmental Protection ("NJDEP") to identify and remediate most of the environmental issues throughout the site. See Def.'s Br. at p. 6.

On June 24, 2004, NJDEP issued an opinion letter stating that NL should refrain from performing any remedial action concerning the contaminated river sediment at that time because "any remedial efforts targeted adjacent to the [site] would be short lived and of little ecological significance as recontamination, due to sedimentation, would occur within a relatively short period of time." Id. While the ISRA proceedings were continuing, the Sayreville Economic and Redevelopment Agency ("SERA") initiated eminent domain proceedings and took legal title to the site in March 2005. Id. SERA entered into a Memorandum of Understanding with the NJDEP which required SERA to take over responsibility for completing the cleanup of the remaining areas of concern at the site (the Tertiary Lagoon System, the North Ditch, and the groundwater). Id at p. 7. Sayreville Seaport Associates, L.P. ("SSA") agreed by private contract with SERA to perform the cleanup activities required of SERA. Id.

On August 11, 2009, Raritan brought this citizens' suit seeking declarations that NL violated provisions of the Resource Conservation and Recovery Act ("RCRA") and the Clean Water Act ("CWA"). See Plaintiffs' Complaint, dkt. no. 1. In addition, Raritan seeks mandatory injunctions directing remediation of sediments in the river and cessation of alleged unpermitted discharges into the river from the three "source" areas on-site. Id. On July 15, 2013, U.S.

District Judge Joel A. Pisano granted a stay as to Raritan's claims related to the alleged on-site source areas and denied the stay as to Raritan's claims seeking injunctive relief with respect to Raritan River sediments adjacent to the site. See dkt. no. 268.

Early in the case, the Court ordered SSA and SERA to produce documents to Raritan related to the contamination at the site and the historical and ongoing environmental investigation and remediation efforts. See Def.'s Br. at p. 9. SSA and SERA had these historical documents because when it assumed responsibility for remediation of the site, SSA conducted a comprehensive review and copying of the documents generated and maintained by NL's environmental consultants in connection with the investigation and remediation of the site. See dkt. no. 233 at p. 5. Raritan then served NL with 129 separate Document Requests covering the river sediments, the alleged on-site "source" areas, and other areas of the site that Raritan has not alleged are impacting the river. See Pl's Br. at p. 1. NL produced documents related to (1) NL's historical operation at the site, (2) NL's investigation of Raritan River sediments, (3) any discharges from the site into the Raritan River, and (4) permits for outfalls from the site into the river. See Def.'s Br. at p. 13. However, NL objected to twenty-five of Raritan's Document Requests. See Pl.'s Br. at p. 10. In addition, NL moves for the Court to issue a Protective Order precluding Raritan from seeking further document production from NL. See Def.'s Br. at p. 28.

## II.    LEGAL STANDARD

It is well established that the scope of discovery in federal litigation is broad. See FED. R. CIV. P. 26(b)(1). Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Id.; see also Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000). Moreover, information sought by the parties need not be admissible at trial if it is "reasonably calculated" to lead to discovery of admissible evidence. FED. R. CIV. P. 26.

3

During the course of discovery, "[a] party may serve on any other party a request within the scope of Rule 26(b)" to produce documents "in the responding party's possession, custody, or control." FED. R. CIV. P. 34(a)(1). Of course, the responding party is not obliged to produce documents that it does not possess or cannot obtain. See Bumgarner v. Hart, Civ. No. 05-3900, 2007 WL 38700, at *5 (D.N.J. 2007) (holding that the Court cannot order production of documents that are not in the responding party's possession or control); see also Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers, 357 U.S. 197, 204 (1958) (acknowledging that Rule 34 requires inquiry into whether a party has control over documents). Not only must the requested documents be in the responding party's possession or control, they must also be relevant. The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court. See Barnes Found. v. Twp. of Lower Merion, 1996 WL 653114, at *1 (E.D. Pa. 1996).

While the scope of discovery is undoubtedly broad, the Federal Rules also provide that a Court "must limit the frequency or extent of discovery otherwise allowed" if it concludes that: (1) the discovery sought is cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. FED. R. CIV. P. 26. Further, "the Court has a responsibility to protect privacy and confidentiality interests" and "has authority to fashion a set of limitations that allow as much relevant material to be discovered as possible . . . while preventing unnecessary intrusions into legitimate interests that may be harmed by the discovery of material sought." Schmulovich v. 1161 Rt. 9 LLC, 2007 U.S. Dist. LEXIS 59705,

at *3-4 (D.N.J. 2007); see also Pearson, 211 F.3d at 65; Fed. R. Civ. P. 26(c).

Rule 37(a) allows a party to file a motion to compel discovery where the opposing party fails to respond adequately to a document request propounded pursuant to Rule 34. FED. R. CIV. P. 37(a)(3)(B)(iv). Ultimately, it is within the discretion of the Court to grant a motion to compel disclosure for good cause shown. In re Cendant Corp. Sec. Litig., 343 F. 3d 658, 661 (3d Cir. 2003).

Rule 26(c) allows the Court to issue, for good cause, an order that protects a party from undue burden or expense by forbidding the disclosures or forbidding the inquiry into certain matters. FED. R. CIV. P. 26(c)(1). Rule 26(c) places the burden of persuasion on the party seeking a protective order to show good cause by demonstrating a particular need for the order. See Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986).

## III. DISCUSSION

### A. Raritan's Motion to Compel

In the present Motion, Raritan moves under Fed. R. Civ. P. 37(a) to compel discovery responses from NL to the Document Requests as to which NL has asserted objections. See dkt. no. 293. At the outset, the Court notes that Raritan has withdrawn its request to compel further clarification as to the documents NL has withheld inasmuch as NL asserts it has produced all non-privileged documents in response to the Document Requests. See Pl.'s Reply Br. at p. 33, dkt. no. 296. In addition, Raritan has withdrawn its Document Request 2 inasmuch as the indemnification agreements would not divest responsible parties of liability and, therefore, the documents are not necessary to proving Raritan's claim. Id at p. 11. At the outset, the Court notes generally that Raritan's Document Requests are overbroad and that it appears many of the requested documents have already been produced. The Court will address Raritan's specific

5

Requests in turn.

### 1. Raritan's Specific Requests

Raritan's Motion to Compel includes 25 specifically enumerated Requests.   The Court

has categorized the Requests for ease of reference.

#### <u>Request Nos. 1, 12, 13, 14, 20 and 22</u>

The Court will address the Document Requests concerning the possession, control and/or

use of the Sayreville Site in tandem.  These Requests state:

> <u>Request 1</u>: All documents that refer or relate to the sale or transfer of any portion
> of or interest in the NL site, including easements, leaseholds, and fee simple
> interests in the site, to and/or from defendant or any other person or entity.  <u>See</u>
> Pl.'s Br. at p. 19.

> <u>Request 12</u>: All documents that refer or relate to defendant or any other person or
> entity's status as a "generator" of contaminants, solid waste, or hazardous waste at
> the NL site. <u>Id</u> at 23.

> <u>Request 13</u>: All documents that refer or relate to the chemicals, compounds, or
> contaminants that were generated at any facilities operated at the NL site and
> disposed of at any site where the presence or migration of such chemicals,
> compounds, or contaminants is known or suspected to influence the NL site
> and/or the Raritan River. <u>Id</u> at 24.

> <u>Request 14</u>: All documents that refer or relate to defendant or any other person or
> entity's status as an "owner or operator" of the NL site, including defendant or
> any other person or entity's ownership or operation of the NL site and its liability
> for the acts of any predecessor "owner or operator. <u>Id</u> at 25.

> <u>Request 20</u>: All documents that refer or relate to any person's entry onto,
> authorized use, or unauthorized use of the portions of the NL site adjacent to the
> Raritan River or to the Raritan River near the NL site for any purpose. <u>Id</u>.

> <u>Request 22</u>: all documents that refer or relate to any agreements, settlements,
> orders, consent decrees or other documents apportioning or assigning
> responsibility for any remedial action at the NL site, including but not limited to,
> the North Ditch, the Tertiary Lagoon System, the groundwater, or the Raritan
> River whether or not defendant(s) is a party. <u>Id</u>.

Raritan claims, <u>inter alia</u>, that these Requests are relevant to the question of which parties bear

6

legal responsibility for placing contaminants in the Raritan River. See dkt. no. 293. In addition, Raritan asserts that the Requests are relevant inasmuch as they would help establish that NL caused contaminants to enter the River and establish a pathway for human harm by showing access to the River. Id.

In its initial objections, NL argued, inter alia, that these Requests are improper because they seek information that does not involve the Raritan River sediments. See dkt. no. 294. NL contends that it is undisputed that NL is a past owner of the site; therefore, it would cause an undue burden to require NL to produce documents concerning an undisputed fact. Id. In addition, NL maintains that it has not owned the site since 2005 and thus does not have information regarding current access to the River. Id.

The Court finds that Raritan's Requests bear no relevance to the un-stayed claims in the Complaint. Previously, the Court stayed Raritan's claims relating to the alleged on-site sources of sediment contamination pending the completion of the on-going NJDEP remediation. See dkt. no. 268. The Court ordered that the claim relating to the allegedly contaminated sediments in the Raritan River was un-stayed. Id. The Court also finds that the Requests are overly broad inasmuch as they bear no relevance to the to the river sediments. Production of the documents concerning the stayed claims would cause undue burden on NL, especially since Raritan already possesses the relevant material concerning the river sediment contamination.

### Request Nos. 3, 6, 7, 8, 9, 10, 11 and 39

The Court will address the Document Requests concerning the physical characteristics and/or levels of contamination at the site in tandem. These Requests state:

> Request 3: All documents that refer or relate to the physical conditions and characteristics of the NL site, including but not limited to, the quantity and nature of the contaminants present at the NL site, or which may have originated at the NL Site. See Pl.'s Br. at p. 20.

7

Request 6: All documents that refer or relate to the past or present impact of the groundwater at the NL site on the sediment contamination in the Raritan River in the vicinity of the NL site, including, but not limited to, all documents that refer or relate to the sources and impact of sediment contamination in the Raritan River, the levels of contamination in the groundwater, and any hydrological connection between the groundwater and the Raritan River. Id.

Request 7: All documents that refer or relate to the past or present impact of the Tertiary Lagoon System on the sediment contamination in the Raritan River in the vicinity of the NL site, including, but not limited to, all documents that refer or relate to the sources and impact of sediment contamination in the Raritan River, the levels of contamination in the Tertiary Lagoon System, and any hydrological connection between the groundwater and the Tertiary Lagoon System. Id at p. 21.

Request 8: All documents that refer or relate to the past or present impact of the North Ditch on the sediment contamination in the Raritan River in the vicinity of the NL site, including, but not limited to, all documents that refer or relate to the sources and impact of sediment contamination in the Raritan River, the levels of contamination in the Tertiary Lagoon System, and any hydrological connection between the North Ditch and the Raritan River. Id.

Request 9:  All documents that refer or relate to any determination or opinion by defendant or any other person or entity that groundwater is not currently and has not in the past contributed to the sediment contamination in the Raritan River in the vicinity of the NL site, including, but not limited to, all documents that refer or relate to the information, data, analysis, and assumptions underlying such conclusions. Id at p. 22.

Request 10: All documents that refer or relate to any determination or opinion by defendant or any other person or entity that the Tertiary Lagoon System is not currently and has not in the past contributed to the sediment contamination in the Raritan River in the vicinity of the NL site, including, but not limited to, all documents that refer or relate to the information, data, analysis, and assumptions underlying such conclusions. Id.

Request 11:  All documents that refer or relate to any determination or opinion by defendant or any other person or entity that the North Ditch is not currently and has not in the past contributed to the sediment contamination in the Raritan River in the vicinity of the NL site, including, but not limited to, all documents that refer or relate to the information, data, analysis, and assumptions underlying such conclusions. Id.

Request 39: All documents that refer or relate to the underground interconnected sheet-pile wall on the landward side of the dock area on the NL site, including,

8

but not limited to: (a) the 1949 drawing(s) that shows dock construction details; (b) all documents that refer or relate to the 1949 inspection of the wall; and (c) all documents that refer or relate to any other inspection(s) and/or repairs of the wall. Id at p. 36.

Raritan claims that the documents sought in these Requests would establish how the contaminants entered the Raritan River sediments. See dkt. no. 293. NL initially "objected to each of these Requests based on Judge Pisano's decision to stay [Raritan's] claims alleging that the three supposed 'source' areas contribute to sediment contamination in the Raritan River and that a cleanup of the alleged 'source' areas should be compelled." See Def.'s Br. at p. 22. NL maintains that it produced all documents relating to investigation of any impact the three alleged source areas had on the River and that Raritan is not entitled to these broad Document Requests relating to the entire source areas. Id. The Court agrees with NL that these Requests are overly broad and beyond the scope of the un-stayed claims. Raritan already has the documents relating to the impact of the three sites areas on the River sediments. These Requests would require NL to produce documents which are irrelevant to the un-stayed claim and the Court finds that the burden of the proposed discovery outweighs any likely benefit. FED. R. CIV. P. 26(3).

### Request Nos. 28, 29, 30, 31 and 35

The Court will address the Document Requests concerning the issue of permit compliance in tandem. These Requests state:

Request 28: all NPDES/NJPDES permit(s) for any portion of the NL site, including, but not limited to, the North Ditch, the Tertiary Lagoon System, and the ground water. See Pl.'s Br. at p. 27.

Request 29: All documents that refer or relate to all NPDES/NJPDES permit(s) for any portion of the NL site, including, but not limited to, the North Ditch, the Tertiary Lagoon System, and the groundwater from 1972 to present. Id.

Request 30: All documents that refer or relate to discharge monitoring in compliance with the NPDES/NJPDES permit(s) issued for the NL site from 1972 to present. Id. at p. 28.

9

Request 31: All documents that refer or relate to compliance or noncompliance with NPDES/NJPDES permit(s) issued for the NL site, including, but not limited to, the North Ditch, the Tertiary Lagoon System, and the groundwater from 1972 to the present. Id at p. 29.

Request 35: All documents that refer or relate to any action(s) that has been implemented, is planned to be implemented, considered, or is currently being considered to address compliance with NPDES/NJDES permit(s) and/or the Clean Water Act at the NL site from 1972 to the present. Id at p. 33.

Raritan argues, inter alia, that NL's compliance with NPDES/NJPDES permits is relevant to the Clean Water Act claim. See dkt. no. 293. Raritan maintains that the Clean Water Act claim requires proof that NL discharged contaminants into the Raritan River without a permit or against the terms of the permit. Id. Raritan asserts that these Requests will assist in establishing the Clean Water Act claim. Id. NL initially objected to these Requests because Raritan failed to limit the Requests to information relevant to: (1) the contaminants identified in the Complaint and (2) permits relating to discharges to the river as opposed to elsewhere on the site. See Def.'s Br. at p. 25. NL maintains that only discharges of the alleged contaminants into the Raritan River are relevant and that Raritan already received copies of the permits from NJDEP and EPA. Id. In addition, NL asserts that it already produced all non-privileged documents in its possession concerning the NPDES/NJPDES permits issued for the site that concerned the Raritan River. Id at p. 26. The Court finds that Raritan's Requests concerning permit compliance on the site to be overly broad. Raritan's Requests are not limited to the five contaminants identified in the Complaint, or for permits that concerned the Raritan River. Therefore, the Court finds that NL's objections to Request Nos. 28, 29, 30, 31 and 35 are valid.

**Request Nos. 25, 32-35**

The Court will address the Document Requests concerning the issue of possible defenses

10

in tandem.  These Requests state:

> Request 25: all documents that refer or relate to New Jersey and or NJDEP's policy of redeveloping brownfield sites in New Jersey...including, but not limited to, any formal explanation of the policy, and any memoranda, drafts, and/or other communications regarding the application and/or implementation of the policy by New Jersey and/or NJDEP at the NL site.  See Pl.'s Br. at p. 26.

> Request 32: All documents that refer or relate to any action initiated by NJDEP against defendant(s) under New Jersey's Spill Compensation and Control Act, N.J.S.A. 58:10-23.11, et seq., related to the NL Site or the Raritan River.  Id at p. 31.

> Request 33: All documents that refer or relate to the Settlement Agreement between NJDEP, the Administrator of the New Jersey Spill Compensation Fund, and SSA, executed on or about September 30, 2008. Id at p. 32.

> Request 34: All documents that refer or relate to the Natural Resource Damages Settlement Agreement between NJDEP, the Administrator of the New Jersey Spill Compensation Fund, NL, and SSA, executed on or about September 30, 2008. Id at p. 32-33.

Raritan asserts that Request Nos. 25, 32, 33 and 34 are relevant because these documents were put at issue in NL's first motion to dismiss and, therefore, could potentially be related to a defense.  See dkt. no. 293.  NL initially objected, inter alia, to these Requests inasmuch as the Requests have no relevance to any elements that Raritan must prove to establish liability under the Clean Water Act or the Resource Conservation and Recovery Act.  See dkt. no. 295.  In addition, NL argues that Raritan already possesses the responsive documents and requests would be unnecessarily cumulative.  Id.  The Court agrees with NL that these Document Requests are overly broad.  The Requests have no relevance to any element of the claim that Raritan must prove for the un-stayed claim in this action.  As such, the Court finds NL's objections to Raritan's Requests are valid.

## 2. Raritan's Request to Produce E-mails

Raritan also seeks to compel NL to produce e-mails pertaining to the contamination at the

site and the historical and ongoing environmental investigation and remediation efforts.  See Pl.'s Br. at 38.  NL has stated that e-mails from before the year 2000 do not exist and that NL has already produced all non-privileged, responsive e-mail communications from after 2000.  Id. Raritan argues that it "is highly implausible that a search of NL's e-mail systems would produce no responsive, non-privileged e-mails."  Id at p. 39.  Raritan also moves the Court to require NL to explain in detail its efforts to search for responsive e-mails and include privileged e-mails in a supplemental privilege log.  Id at p. 40.

NL maintains that Raritan's Motion to compel the production of additional emails should be denied.  See Def.'s Br. at p. 29.  NL argues that e-mail communications did not exist during the time when NL operated the Site.  The environmental investigation at the site began in 1988 and was active through the early 2000s.  E-mail communication became common during the late 1990s; however, unless e-mails were printed out, most e-mails from that period were likely deleted due to limited storage space on hard drives.  Id.  In addition, NL asserts that the document review identified extremely few responsive e-mails because most of the interactions between NL's consultant and NJDEP occurred through more formal methods.  Id.  Ultimately, NL concluded that it had produced all responsive, non-privileged e-mails to Raritan.  Id at 30. Indeed, NL certifies that it provided Raritan with all of the e-mails that it possesses even though there were only three e-mails.  Accordingly, the Court declines to compel NL to produce the e-mails or to require NL to explain in detail its efforts to search for responsive e-mails.

### B. NL's Cross-Motion for a Protective Order

NL seeks a Protective Order that would preclude Raritan from seeking any further document production from NL.  See Def.'s Br. at p. 28.  As an initial matter, NL contends that good cause exists to preclude additional document discovery due to the amount of information

already in Raritan's possession. Id.  In addition, NL maintains that a Protective Order is appropriate inasmuch as responding to Raritan's Requests would cause an extreme burden and expense, especially since much of the material is cumulative and/or irrelevant. Id. at p. 27.

Raritan maintains that NL's argument for the Protective Order is meritless inasmuch as the Requests concern documents relevant to the un-stayed claims and argues that the documents would not be cumulative to material already in Raritan's possession. See Pl.'s Br. at p. 2. Raritan argues that NL's motion for a Protective Order is an attempt to dictate the scope of discovery contrary to the broad rule that parties are entitled to all relevant discovery. FED. R. CIV. P. 26(b)(1). See Pl.'s Br. at p. 2. In addition, Raritan claims that NL has made no showing that it would bear an undue burden and expense by producing the documents. See Pl.'s Br. at p. 27. Raritan also maintains that the Protective Order shielding NL from further discovery is premature inasmuch as Raritan has only propounded one set of document requests. Id. at p. 28.

The Court finds that NL has established good cause to warrant the issuance of a Protective Order barring Raritan from further discovery. FED. R. CIV. P. 26(c)(1)(A). As stated above, the Court finds that Raritan's Requests are irrelevant to the un-stayed claims inasmuch as the Requests are beyond the scope of the river sediment contamination claim and that Raritan already possesses the relevant material concerning the river sediment contamination. Moreover, NL has stated it has already produced over 10,000 pages of documents concerning the investigation of any impact the three alleged source areas had on the river sediment and that the remaining requests concern documents that Raritan already has in its possession. The Court agrees that compliance with the Document Requests would place an undue burden on NL and would lead to the production of cumulative materials. Therefore, the Court grants NL's cross-motion for a Protective Order pursuant to FED. R. CIV. P. 26(c)(1)(A).

## IV.    CONCLUSION AND ORDER

The Court has considered the papers submitted and oral arguments before the Court and, for the reasons set forth above;

IT IS this 30th day of June, 2014,

**ORDERED** that Raritan's Motion to Compel Discovery [dkt. no. 293] is **DENIED**; and it is further

**ORDERED** that NL's Cross-Motion for a Protective Order [dkt. no. 296] is **GRANTED**; and it is further

**ORDERED** that, for the reasons stated on the record on June 16, 2014, the Court **STRIKES** Raritan's Memorandum in Support of Motion to Compel [dkt. no. 298].

**s/ Douglas E. Arpert**
**DOUGLAS E. ARPERT, U.S.M.J.**
