UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RARITAN BAYKEEPER, INC., *et al.*, | |
| Plaintiffs, | Civil Action No. 09-4117 (JAP)(DEA) |
| v. | **MEMORANDUM OPINION AND ORDER** |
| NL INDUSTRIES, INC., *et al.*, | |
| Defendants. | |

ARPERT, Magistrate Judge

This matter comes before the Court on two motions: (1) a Motion to Bifurcate pursuant to Federal Rule of Civil Procedure 42(b) by Defendants NL Environmental Management Services, Inc. and NL Industries, Inc. (collectively "Defendants") [Dkt. No. 300]; and (2) a Motion by Plaintiffs to file opposition to the New Jersey Transit Authority ("NJTA")'s Brief in Support of Defendants' Motion to Bifurcate [Dkt. No. 308]. The Court heard oral argument on these motions on September 15th, 2014. For the reasons set forth below, Defendants' Motion to Bifurcate [Dkt. No. 300] is DENIED, and for the reasons set forth on the record, Plaintiffs' Motion to file opposition to NJTA's Brief in Support of Defendants' Motion to Bifurcate [Dkt. No. 308] is TERMINATED as MOOT.

I.   BACKGROUND AND PROCEDURAL HISTORY

The parties are intimately familiar with the history of this case and the facts pertaining to the present Motions. Accordingly, the Court will not recite them at length.[1] Defendant NL

---
[1] For a full recitation of the facts underlying this matter, *see Raritan Baykeeper, Inc. v. NL Industries, Inc.,* 2013 WL 103880 (D.N.J. Jan. 8, 2013).

Industries, Inc. ("NL") operated a titanium dioxide pigment manufacturing facility on a portion of a 440–acre site in Sayreville, New Jersey from approximately 1935 to 1982. *See* Def.'s Br. at p. 4, Dkt. No. 300. In 1988, NL commenced an environmental investigation at the site under the Industrial Site Recovery Act ("ISRA"), *N.J.S.A.* § 13:1K–11.4, *et seq. Id.* NL worked with the New Jersey Department of Environmental Protection ("NJDEP") to identify and remediate most of the environmental issues throughout the site. *See Id.*

On June 24, 2004, NJDEP issued an opinion letter stating that NL should refrain from performing any remedial action concerning the contaminated river sediment at that time because "any remedial efforts targeted adjacent to the [site] would be short lived and of little ecological significance as recontamination, due to sedimentation, would occur within a relatively short period of time." *Id.* While the ISRA proceedings were continuing, the Sayreville Economic and Redevelopment Agency ("SERA") initiated eminent domain proceedings and took legal title to the site in March 2005. *Id.* at p. 5. SERA entered into a Memorandum of Understanding with the NJDEP which required SERA to take over responsibility for completing the cleanup of the remaining areas of concern at the site (the Tertiary Lagoon System, the North Ditch, and the groundwater). Id at p. 7. Sayreville Seaport Associates, L.P. ("SSA") agreed by private contract with SERA to perform the cleanup activities required of SERA. *Id.*

On August 11, 2009, Plaintiffs brought this citizens' suit seeking declarations that NL violated provisions of the Resource Conservation and Recovery Act ("RCRA") and the Clean Water Act ("CWA").[2] *See* Plaintiffs' Complaint, Dkt. No. 1. In addition, Plaintiffs seek mandatory injunctions directing remediation of sediments in the river and cessation of alleged unpermitted discharges into the river from the three "source" areas on-site. *Id.* On July 15, 2013,

---

[2] Plaintiffs have amended their Complaint twice. Plaintiffs' First Amended Complaint was filed on October 13, 2009, and Plaintiffs' Second Amended Complaint was filed on December 14, 2012.

U.S. District Judge Joel A. Pisano granted a stay as to Plaintiffs' claims related to the alleged on-site source areas and denied the stay as to Raritan's claims seeking injunctive relief with respect to Raritan River sediments adjacent to the site. *See* Dkt. No. 268.

Defendants filed the present Motion to Bifurcate on June 30, 2014 [Dkt. No. 300]. Plaintiffs filed their opposition to Defendants' Motion to Bifurcate on July 28, 2014 [Dkt. No. 304]. Also on July 28, 2014, NJTA filed a Brief in support of Defendants' Motion to Bifurcate [Dkt. No. 305]. Plaintiffs then filed the present Motion for leave to file opposition to NJTA's Brief in support of Defendants' Motion [Dkt. No. 308].

## II.     LEGAL STANDARD

Motions to bifurcate are governed by Federal Rule of Civil Procedure 42(b). Pursuant to Rule 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Under Rule 42(b), "a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." *Medpointe Healthcare, Inc. v. HiTech Pharmacal Co., Inc.,* 2007 WL 188285, at *5 (D.N.J. Jan. 22 2007); *see also Idzojtic v. Pennsylvania R.R. Co.,* 456 F.2d 1228, 1230 (3d Cir. 1972) ("The district court is given broad discretion in reaching its decision whether to separate the issues of liability").

In determining whether bifurcation is proper, "courts should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." *SenoRx, Inc. v. Hologic, Inc.,* 920 F. Supp. 2d 565, 567 (D.Del. 2013) (citations omitted). The moving party has the burden of demonstrating that bifurcation would best serve the interests of judicial economy and that no party would be unduly prejudiced by

separate trials. *Ortho-McNeil v. Teva Pharmaceuticals USA,* 2003 WL 25888720, at *2 (D.N.J. Jan. 28, 2003) (citing *Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.,* 180 F.R.D. 254, 256 (D.N.J. 1997)); *see also Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pennsylvania, Inc.,* 49 F. Supp. 2d 709, 721 (D.N.J. 1999) ("Because 'a single trial tends to lessen the delay, expense and inconvenience to all parties,' the burden rests on the party seeking bifurcation to show that it is proper").

## III. DISCUSSION

Defendants argue that the Court should first determine whether Plaintiffs have demonstrated a remediable injury under RCRA, and then, if necessary, determine whether Defendants are responsible for that injury. Specifically, Defendants propose the bifurcation of this matter into two phases. Phase I would address whether the Raritan River sediments present an "imminent and substantial endangerment" under the third element of RCRA, and if so, whether any non-futile remedy can be implemented in light of the possibility of recontamination. Phase II, for which discovery would be stayed pending resolution of Phase I, would assign responsibility for implementing the remedy decided in Phase I to the proper party. According to Defendants, under their proposed bifurcation, Phase I could be dispositive of Plaintiffs' remaining claims and would "save the parties and the Court significant time, money, and effort and to expedite a conclusion to this litigation." Def.'s Br. At p. 4.

To prevail on a claim under RCRA, "a plaintiff must prove: (1) that the defendant is a person, including, but not limited to, one who was or is a generator or transporter of solid or hazardous waste or one who was or is an owner or operator of a solid or hazardous waste treatment, storage, or disposal facility; (2) that the defendant has contributed to or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; and

(3) that the solid or hazardous waste may present an imminent and substantial endangerment to health or environment." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.,* 399 F.3d 248, 258 (3d Cir. 2005).

### A. Prejudice to the Parties

Defendants claim that the bifurcation of this matter will not prejudice Plaintiffs because they "will have a full and fair opportunity to present all relevant evidence on the distinct Phase I RCRA threshold issues and the Phase II liability question." Def's Br. at p. 19. In opposition, Plaintiffs assert they would be suffer extreme prejudice by being required to prove the feasibility of a remedy before liability has been determined.

"The party seeking bifurcation must demonstrate that [it] will suffer prejudice if separate trials are not granted." *Miller v. New Jersey Transit Authority Rail Operations,* 160 F.R.D. 37, 40 (D.N.J. 1995) (citation omitted). While Defendants argue that Plaintiffs would not be prejudiced by bifurcation, they do not allege any prejudice that will be suffered by Defendants if this matter is not bifurcated. Accordingly, the Court finds that Defendants have failed to demonstrate that they will suffer any prejudice if this matter is not bifurcated.

### B. Conservation of Judicial Resources

Defendants assert that the issues which would be addressed by the Court in Phase I are "potentially dispositive" because if Plaintiffs fail to establish that the alleged river sediment contamination presents an "imminent and substantial endangerment", then Plaintiffs have failed to make the required showing under the third element of RCRA, and their RCRA claim should be dismissed. Def.'s Br. at p. 11. In opposition, Plaintiffs argue that absent a determination of liability, the Court cannot order Defendants to conduct a remedial investigation of the sediments, and that absent such an investigation, the Court cannot adequately address the issue of remedy.

Plaintiffs further argue that far from promoting judicial efficiency, Defendants' proposal is likely to cause "unnecessary complication and delay" because while Phase I could be dispositive as to Plaintiffs' RCRA claim, Phase I will not address or resolve Plaintiffs' remaining claims under the CWA. Pl.'s Br. at p. 9-10.

While Defendants argue that Phase I could be dispositive of Plaintiffs' RCRA claim, Defendants fail to address Plaintiffs' CWA claims in their proposed disposition of this matter. Plaintiffs' burden to establish an "imminent and substantial endangerment" only applies to their RCRA claim, and Plaintiffs' failure or success in meeting their burden in Phase I would not be dispositive of the remaining CWA claims. Even assuming, *arguendo*, that the Court ordered the bifurcation of this matter and Phase I resulted in the dismissal of Plaintiffs' RCRA claim, Plaintiffs' claims under the CWA would require further adjudication. Therefore, because any conservation of judicial resources resulting from the possible resolution of Plaintiffs' RCRA claim in Phase I would be negated by the remaining CWA claims, the Court finds that bifurcation will not expedite or economize the resolution of this matter.

Accordingly, because Defendants have failed to establish that the bifurcation of this matter will avoid prejudice or conserve judicial resources, the Court declines to exercise its discretion to bifurcate this matter pursuant to Federal Rule of Civil Procedure 42(b). Accordingly, Defendants' Motion to Bifurcate is **DENIED**.

## IV.    CONCLUSION AND ORDER

Having considered the papers submitted pursuant and oral argument by the parties, and for the reasons set forth above;

**IT IS** on this 30th day of September, 2014,

**ORDERED** that Defendants' Motion to Bifurcate this matter pursuant to Federal Rule of Civil Procedure 42(b) [Dkt. No. 300] is **DENIED**; and it is further

**ORDERED** that Plaintiffs' Motion to file opposition to NJTA's Brief in Support of Defendants' Motion to Bifurcate [Dkt. No. 308] is **DENIED.**

Dated: September 30, 2014                     /s/ Douglas E. Arpert
                                                                         DOUGLAS E. ARPERT
                                                                         United States Magistrate Judge