**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RARITAN BAYKEEPER, INC., et al., | :<br>:<br>: |
| Plaintiffs, | : Civil Action No. 09-4117 (MAS) (DEA)<br>: |
| v. | :<br>: **MEMORANDUM OPINION** |
| NL INDUSTRIES, INC., et al., | :<br>: |
| Defendants. | :<br>: |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiffs Edison Wetlands Association, Inc. and Raritan Baykeeper, Inc.'s ("Plaintiffs") appeal of a non-dispositive order issued by the Honorable Douglas E. Arpert, U.S.M.J., denying Plaintiffs' motion to compel discovery and granting Defendants NL Industries, Inc. and NL Environmental Management Services, Inc.'s (collectively, "NL" or "Defendants") cross-motion for a protective order. (ECF No. 302.) NL opposed the appeal (ECF No. 309), and Plaintiffs filed a reply (ECF No. 310). The Court has carefully considered the parties' positions and decides the appeal without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the decision of the Magistrate Judge is affirmed.

### I.   BACKGROUND

#### A.   Facts Alleged[1]

This suit relates to a site formerly owned by Defendants consisting of approximately 440 acres of land (the "Site") located in Sayreville, New Jersey. The Site is surrounded on three sides

---

[1] The facts alleged in this case have been detailed in prior opinions and need not be repeated at length here. *See, e.g., Raritan Baykeeper, Inc. v. NL Indus., Inc.*, No. 09-4117 (JAP), 2013 WL 103880 (D.N.J. Jan. 8, 2013) (Pisano, J.). Background facts in this section are derived from the Amended Complaint unless otherwise indicated.

by the Raritan River. NL owned the Site from the early 1930's until 2005. From approximately 1935 to 1982, NL manufactured titanium dioxide pigments on the Site that were used in paints, paper, cosmetics, and other products. In 1982, NL ceased operations at the Site. In 1988, the New Jersey Department of Environmental Protection ("NJDEP") required NL to conduct an environmental investigation of the Site, which revealed that river sediments adjacent to and downstream from the Site were contaminated with arsenic, copper, lead, nickel, and zinc. The NJDEP, in June 24, 2004 correspondence, concluded that "N.L. Industries has contributed to the sediment contamination detected adjacent to the site." NJDEP did not require NL to conduct remediation or additional investigation of the river sediments at that time because it found that "any remedial actions conducted in this area of the river should be part of a regional approach." (Amended Complaint (hereinafter referred to as the "Complaint" ("Compl.")) ¶ 75, ECF No. 221.)

In 2005, the Sayreville Economic and Redevelopment Agency ("SERA"), a defendant in this action but not a party to this appeal or the underlying motions, acquired the Site from NL by eminent domain for the purpose of redevelopment. In or about 2008, SERA entered into a Memorandum of Understanding with NJDEP, pursuant to which SERA undertook responsibility for completing the remedial investigation and remedial action for the Site. SERA contracted Sayerville Seaport Associates, L.P. ("SSA") to undertake the redevelopment project and perform the required cleanup. According to the Complaint, the investigation and remediation process remained ongoing at the time Plaintiffs filed this action.

### B. Procedural History

On August 11, 2009, Plaintiffs brought this citizens' suit against Defendants and others alleging violations of various provisions of the Resource Conservation and Recovery Act ("RCRA") and the Clean Water Act ("CWA"). In their complaint, Plaintiffs allege that NL and other defendants have violated section 7002(a)(1)(B) of the RCRA, 42 U.S.C. § 6972(a)(1)(B), by

having "contributed to the past or present handling, storage, treatment, transportation, or disposal of the contaminants"—specifically, arsenic, copper, lead, nickel, and zinc— in the river sediments. (Compl. ¶ 99.) The complaint further alleges that NL and others violated sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a), 1342, by discharging arsenic, copper, lead, nickel, and zinc into the river from several on-Site sources (North Ditch, Tertiary Lagoon, and through groundwater) without a permit authorizing the discharges. Plaintiffs seek declarations that Defendants have violated the RCRA and CWA, as well as injunctive relief requiring the remediation of contaminated river sediments and prohibiting unpermitted discharges from the aforementioned on-Site sources.

On July 12, 2013, the Honorable Joel A. Pisano, U.S.D.J.,[2] entered an Order staying certain portions of this action pending the completion of remedial activities. (ECF No. 268.) As to NL, proceedings in connection with Plaintiffs' claims that relate to the on-Site source areas have been stayed. (*Id.*) Plaintiffs' claims seeking injunctive relief with respect to the Raritan River sediments adjacent to the Site have not been stayed.[3] (*Id.*)

Prior to the Court's stay, Plaintiffs sought leave for discovery, and the Court ordered SERA and SSA to produce documents relating to contamination at the Site and the historical and ongoing investigation and remediation efforts. Thereafter, Plaintiffs sought leave for discovery from NL. Judge Pisano, seemingly skeptical of the necessity of the discovery sought by Plaintiffs (ECF No. 294-4 at 48-49), admonished Plaintiffs "that any demands for discovery be tailored to be relevant to this dispute, *i.e.*, the contamination of the river sediment and groundwater contamination at the site" (*id.* at 49) and limited the discovery to document production only (*id.* at 48). As a prerequisite

---

[2] This matter was reassigned to the Undersigned upon the retirement of Judge Pisano.

[3] These claims are referred to by the parties in their papers, by Judge Arpert in his decision, and by Judge Pisano in the Case Management Order (ECF No. 268) as the "un-stayed" claims.

to the discovery, Judge Pisano required that the Plaintiffs "have an informal conversation with [Defendants] and tell [Defendants] exactly what [Plaintiffs] want and let [Defendants] determine whether they've already turned it over, whether it doesn't exist, whether they'll give it to you or they won't and only then should you file a document demand." (*Id.* at 51.)

Thereafter, Plaintiffs sent Defendants a thirty-page spreadsheet detailing the extensive document production that they had already received from SSA, SERA, and the NJDEP. Plaintiffs also served on NL a Request for the Production of Documents.

Plaintiffs' Request for the Production of Documents to NL contained forty numbered requests, which, inclusive of subparts, actually constituted 129 separate document requests. NL objected to twenty-nine of the forty numbered requests. The parties agreed to a rolling document production schedule, and thereafter NL produced over 10,000 pages of documents relating to the historical operation of the site, NL's investigation of the river sediments, any discharges from the site into the river, and permits for outfalls from the Site into the river. (*See* ECF Nos. 293-14, -15, -24.) NL did not produce documents in response to the objected-to requests.

After informally trying and failing to resolve their differences over the disputed document requests, Plaintiffs filed a motion to compel discovery with respect to twenty-five of the twenty-nine[4] disputed requests, which Defendants opposed. In addition, Defendants filed a cross-motion for a protective order prohibiting Plaintiffs from seeking further discovery from NL. On June 16, 2014, Judge Arpert held a hearing on the motions and advised the parties of his decision to deny the motion to compel and to grant the motion for a protective order. On July 1, 2014, Judge Arpert issued his Opinion and Order (July 1, 2014 Op., ECF No. 301), and this appeal followed. Plaintiffs

---

[4] Plaintiff conceded that three of their requests were not relevant to NL's liability for sediment contamination in the Raritan River and one was cumulative of other requests. (*See* ECF No. 293-1 at 14, n.5.)

4

appeal Judge Arpert's decision with respect to thirteen of the twenty-five ruled-on document requests, specifically requests numbered 3, 6-13, and 28-31.

II. **ANALYSIS**

    A. **Legal Standard**

On an appeal from a discovery order, the scope of the District Court's review is narrow. *Alit (No. 1) Ltd. v. Brooks Ins. Agency*, No. 10-2403, 2012 WL 5304636, at *2 (D.N.J. October 25, 2012). Section 636(b) of Title 28 to the U.S. Code and Local Civil Rule 72.1(c) govern appeals from non-dispositive orders of United States Magistrate Judges. Both direct District Courts to consider the appeal and set aside any portion of the Magistrate Judge's order found to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); L. Civ. R. 72.1(c)(1)(A). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Thomas v. Ford Motor Co.*, 137 F. Supp. 2d 575, 579 (D.N.J. 2001) (citing *Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1035, 1037 (D.N.J. 1995)).

Further, "[w]here a Magistrate Judge is authorized to exercise his or her discretion in determining a non-dispositive motion, the decision will be reversed only for an abuse of that discretion." *Thomas*, 137 F. Supp. 2d at 579 (citing *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205, 214 (D.N.J. 1997); *Kresefsky v. Panasonic Commc'ns & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996)). Typically, the management of discovery is committed to a court's sound discretion. *Miller v. Hassinger*, 173 F. App'x 948, 954 (3d Cir. 2006) (citing *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987)).

### B. Document Requests

In ruling on the motion to compel, Judge Arpert separated Plaintiffs' twenty-five disputed document requests into four groups and rendered a ruling as to each group. The document requests encompassed by the instant appeal fall into three of the four groups.

The first group of requests concerned the possession, control, and use of the Site. Requests 12 and 13 were included in this group. NL objected to Request 12 as overbroad and burdensome, and noted that the documents sought were those that related in *any* way to *any* contaminant, solid, or hazardous waste "generated" at the Site by *any* party. (ECF No. 294 at 22.) NL further argued that Request 13 was similarly broad and burdensome, as it, too, was not limited in its scope to the contaminants at issue in this lawsuit, the Raritan River discharges, or the alleged "source" areas. Judge Apert found the requests to be overbroad and not relevant to the claims relating to contaminated river sediments (*i.e.*, the un-stayed claims). The Magistrate Judge also found these requests to be unduly burdensome, particularly in light of his finding that Plaintiffs were already in possession of relevant material concerning river sediment contamination.

The second group of requests concerned the physical characteristics of the Site and levels of contamination at the Site. Requests 3 and 6-11 were included in this group. NL argued that to the extent that these requests sought documents that did not concern the three source areas at issue, the requests were overbroad and burdensome. In particular, NL noted that because there are eighty-three different "areas of concern" on the Site that bear no relevance to this lawsuit, Plaintiffs' broad requests would require the review and production of as many as tens of thousands of pages of allegedly irrelevant documents. NL further argued that to the extent that these requests concern the Site's three source areas, claims regarding these source areas have been stayed. Judge Arpert accepted NL's argument and found these requests to be unduly burdensome, overbroad, and beyond the scope of the un-stayed claims. Further, Judge Arpert noted that NL had already

6

produced all documents relating to the investigation of any impact the Site's three source areas had on the River.

The third group of requests concerned the issue of permit compliance. Requests 28-31 fell into this group. NL again argued that Plaintiffs failed to properly limit their requests to information relevant to their specific burdens in this case, namely, the particular contaminants identified in the complaint and permits relating to river discharges as opposed to discharges elsewhere on the Site. NL further noted that Plaintiffs had already received copies of the relevant permits in discovery from the NJDEP. Judge Arpert held that the requests were overbroad and upheld NL's objections.

The Court has thoroughly considered the matter in light of the above cited legal standards and finds no basis to disturb Judge Arpert's rulings. Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). However, while the scope of discovery may be broad, it is not without bounds. When the burden of a discovery request is likely to outweigh the benefits, Rule 26(b)(2)(C) vests the District Court with the authority to limit a party's pursuit of otherwise discoverable information. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) ("Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed."). Accordingly, a discovery request may be denied if this Court finds that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the discovery after assessing the following factors: (i) the unreasonably cumulative or duplicative effect of the discovery; (ii) whether "the party seeking discovery has had ample opportunity to obtain the information by [other] discovery"; and (iii) "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

In denying Plaintiffs' motion to compel, Judge Arpert properly examined Plaintiffs' broad discovery requests in light of: (1) the existing stay on all claims regarding the on-Site sources of contaminated river sediment and (2) the specific allegations in the complaint. He further weighed the relevance and benefits of the requested materials against the burden that would be placed on the producing party. Judge Arpert's analysis also appropriately took into consideration the discovery material already in Plaintiffs' possession from NL and other parties. Further, this Court has considered the record in this case, including the breadth of Plaintiffs' discovery requests, their relevance to the un-stayed claims, and the discovery that already has been produced to Plaintiffs, and finds that Judge Arpert's decision to deny Plaintiffs' motion to compel is supported by the record. Consequently, the Court finds that Judge Arpert's decision was neither clearly erroneous nor an abuse of his discretion and affirms Judge Arpert's rulings on the motion to compel the production of documents.

### C.  E-mail Messages

In response to Plaintiffs' discovery requests, NL produced only three responsive e-mail messages pertaining to contamination at the Site and the historical and ongoing environmental investigation and remediation efforts at the Site. These came from a consultant's e-mail account. No responsive e-mail messages were produced from any internal NL account. In their motion to compel, Plaintiffs took issue with the quantum of the e-mail message production and sought to compel either the production of additional responsive e-mail messages or a certification from NL detailing the search methodology undertaken to locate responsive e-mail messages. Plaintiffs argued that it was "highly implausible" that a search of NL's email system would produce no responsive e-mail messages.

In response, NL first explained that e-mail messages did not exist during the time period in which it conducted operations at the Site (1930s to 1980s), and, second, that early e-mail

communications (late 1990s to early 2000s) were likely not preserved due to the technological limitations of the period. Also, NL noted that interaction between NL's consultant and NJDEP typically occurred through more formal methods – letters, reports, calls and meetings, not through e-mail messages. Therefore, it was not surprising that few responsive e-mail messages existed. Nevertheless, in an abundance of caution, NL conducted a second review for responsive e-mail messages, and no additional messages were found.

Ultimately, Judge Arpert credited NL's representations that it had produced all responsive e-mail messages in its possession and declined to compel NL to produce additional e-mail messages or to produce a detailed explanation of its search methodology to Plaintiffs. (July 1, 2014 Op. 12.) On appeal, Plaintiffs argue that Judge Arpert's decision was clearly erroneous because Judge Arpert stated that NL "certifie[d]" that it provided Plaintiffs with all responsive e-mail messages when, in fact, there was technically no "certification" to that effect. Indeed, Judge Arpert may have inadvertently used the term "certifies" when no "certification" was made. The Court finds, however, that Plaintiffs' argument elevates form over substance. Given the time period at issue and the technological limitations during that time period (which were noted by Judge Arpert in his decision), the Court finds no error in Judge Arpert crediting NL's representations and concluding that NL had produced all the responsive e-mail messages in its possession. Judge Arpert's decision in this regard, therefore, is affirmed.

### D.     Protective Order

Plaintiffs also appeal Judge Arpert's entry of a protective order precluding them from seeking further document discovery against NL. Rule 26 permits a court, upon a finding of good cause, to issue a protective order for purposes of "protect[ing] a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Here, Plaintiffs' discovery requests were extremely broad and of questionable relevance to the un-stayed

claims in this matter. The Court is satisfied that good cause exists and, thus, finds no abuse of discretion in the issuance of the protective order.

### III.  CONCLUSION

For the reasons set forth above, the Court affirms the July 1, 2014 decision of the Magistrate Judge denying Plaintiffs' motion to compel and granting NL's cross-motion for a protective order. An appropriate order accompanies this Memorandum Opinion.

                                                           **MICHAEL A. SHIPP**
                                                           **UNITED STATES DISTRICT JUDGE**

Date: March 31st, 2015