**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RARITAN BAYKEEPER, INC., et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>NL INDUSTRIES, INC., et al.,<br><br>　　　　　　Defendants. | Civil Action No. 09-4117 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

　　　Plaintiffs Raritan Baykeeper, Inc. and Edison Wetlands Association, Inc. ("EWA") (collectively, "Plaintiffs") bring this declaratory judgment action to remedy the alleged contamination of sediments in an area of the Raritan River bordering a former titanium dioxide production site ("NL Site"). (*See generally* Am. Compl., ECF No. 24.) Plaintiffs seek to hold the former owner and operator of the titanium dioxide plant, NL Industries Inc., and the entities that maintain three bridges that cross the NL Site ("Bridges"), the New Jersey Department of Transportation ("NJDOT") and New Jersey Turnpike Authority ("NJTA"), liable for contributing to the alleged sediment contamination. (*Id.*) This matter comes before the Court on several motions. Defendants Richard Hammer, in his official capacity as Acting Commissioner of the NJDOT, and Michael Davis, in his official capacity as the Regional Director of Operations for the Central Region of the NJDOT (collectively, "NJDOT Defendants"); NL Environmental Management Services, Inc. and NL Industries, Inc. (collectively, the "NL Defendants"); and New Jersey Turnpike Authority and Joseph W. Mrozek (collectively, the "NJTA Defendants," with NL Defendants and NJDOT Defendants, "Moving Defendants") move for summary judgment. (ECF

Nos. 345, 347, 349.) Plaintiffs move for partial summary judgment and declaratory judgment on Article III standing (ECF No. 348) and for partial summary judgment against Moving Defendants on their claim under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B) (ECF No. 350). NL Defendants cross move against Plaintiffs seeking dismissal of Plaintiffs' Complaint for lack of Article III standing. (ECF No. 364.) In addition, NJTA Defendants move to strike the expert reports and preclude the trial testimony of Plaintiffs' experts, Drs. Bruce Bell, Atul Salhotra, and William Rogers. (ECF Nos. 381, 382, 383.) NL Defendants move to preclude the testimony of Plaintiffs' experts, Drs. George Flowers, Bruce Bell, Atul Salhotra, and William Rogers. (ECF Nos. 384, 386, 387, 388.) NJDOT Defendants move to strike the expert reports of Drs. Bruce Bell, William Rogers, and Atul Salhotra. (ECF No. 385.) The Court has considered the parties' submissions and decides the matters without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court denies Plaintiffs' motions for summary judgment; denies NL Defendants' motion for summary judgment; denies NL Defendants' cross motion for summary judgment on Article III standing; grants NJTA Defendants' motion for summary judgment; denies NJDOT Defendants' motion for summary judgment as moot; and denies the Moving Defendants' motions to strike the expert reports and/or preclude the testimony of Plaintiffs' experts.

I.   **Background & Procedural History**[1]

The NL Site was formerly owned by NL Industries, Inc., to manufacture titanium dioxide pigment. (Pls.' Statement of Material Facts Not in Dispute in Support of Motion for Partial

---

[1] The facts alleged in this case have been detailed in prior opinions and need not be repeated at length herein. (Op., Jan. 8, 2013, ECF No. 233.) Unless otherwise indicated, the facts provided are undisputed.

Summary Judgment on RCRA Claim ("Pls.' RCRA SJ SUMF") ¶ 1, ECF No. 350-2.) This site consists of approximately 440 acres of land located in Sayreville, Middlesex County, New Jersey. (*Id.*) The NL Site borders the Raritan River on three sides. (*Id.*) Upstream and along the same shore of the Raritan River as the NL Site is the Horseshoe Road Superfund Site. (*Id.* ¶ 4) Downstream of the NL Site, in Raritan Bay, is the Raritan Bay Slag Superfund Site. (*Id.*)

### A. Investigation of Contaminants at the NL Site

New Jersey uses ecological screening criteria ("ESC") to screen contaminants in sediment. (Pls.' RCRA SJ SUMF ¶ 66.) The New Jersey Department of Environmental Protection's ("NJDEP") Ecological Evaluation Technical Guidance states that ESC "are conservative screening values intended to be protective of the target organisms based on direct exposure." (*Id.*) For sediment in estuarine environments, such as the subject sediment, New Jersey uses the ESC adopted from the National Oceanic and Atmospheric Administration called the "Effects Range Low" ("ER-L") and the "Effects Range Medium" ("ER-M"). (*Id.* ¶¶ 67, 73.) The ER-L represents the concentration at which adverse impact to benthic (bottom-dwelling) organisms are found in approximately 10% of studies. (*Id.*) The ER-M represents the concentrations at which adverse impacts to benthic organisms are found in 50% of the studies. (*Id.*)

#### 1. 2000 and 2002 Sampling

In 1988, the NJDEP required NL Industries, Inc. to conduct an environmental investigation of the NL Site in compliance with New Jersey's Environmental Cleanup Responsibility Act, which is now known as the Industrial Site Recovery Act. (*Id.* ¶ 32.) As a result, in June of 2000 and July and August of 2002, NL Defendants collected samples of river sediments taken from locations downstream, adjacent to, upstream, and across the river from the Site. (*Id.* ¶¶ 41-43.) The sampling indicated the presence of arsenic, copper, lead, nickel, and zinc in the sediment. (*Id.*

¶ 42.)  The concentration of these metals in the 2000 and 2002 samples, which were taken from the upper six inches of the subject sediment, show exceedances of the ER-L and the ER-M. (*Id.* ¶ 75.)

### 2. 2008 Sampling

In 2008, Chapin Engineering conducted an analysis of the sediments adjacent to the NL Site ("Chapin Report"). (NL's Statement of Material Facts Not in Dispute in Support of Motion for Summary Judgment ("NL's SJ SUMF") ¶ 54, ECF No. 347-2.)  Between October 23 and November 21, 2008, an engineering consulting firm, Princeton Hydro, collected sediment samples for the Chapin Report. (*Id.* ¶ 56.)  The samples were collected from 0-12 inches below the sediment surface and from 1 foot to 2.5 feet below the sediment surface. (*Id.* ¶ 59.) The analysis of the samples identified concentrations of arsenic and lead; Chapin Engineering did not look for the copper or zinc in the samples. (*Id.* ¶¶ 57-58.) The highest arsenic concentration detected in the top foot of sediment was 119 parts per million ("ppm"), which was detected upstream of the NL Site. (*Id.* ¶ 60.) The highest arsenic concentration detected in the top foot of sediment adjacent to the NL Site was 77 ppm. (*Id.* ¶ 61.) Arsenic concentrations in every other sample of the top foot of sediments adjacent to the NL Site were below 47 ppm. (*Id.* ¶ 62.)  The highest lead concentration detected in the top foot of sediment was 193 ppm, which was detected upstream from the NL Site. (*Id.* ¶ 65.) The highest lead level detected in the top foot of sediment adjacent to the NL Site was 158 ppm. (*Id.* ¶ 66.)

### 3. 2011 Sampling

In 2011, EWA provided funds for a study on the water quality of the Raritan River. (Pls.' RCRA SJ SUMF ¶ 44.)  As part of this study, Professor Lisa A. Rodenburg of Rutgers University, analyzed the presence of heavy metals from samples collected from the top two centimeters of the

subject sediment ("Rodenburg Report"). (*Id.*) The Rodenburg Report found that arsenic exceeded the ER-L in sixteen of forty-two samples, and copper exceeded the ER-L in twenty-four of forty-two samples and exceeded the ER-M in one sample. (*Id.* ¶ 45.)

### B.   Plaintiffs' Complaint

Plaintiffs are non-profit organizations "dedicated to preserving and protecting New Jersey's environment, including its waterways through public education, advocacy, and litigation." (Pls.' Statement of Material Facts Not in Dispute in Support of Summary Judgment ("Pls.' SJ SUMF") ¶¶ 62, 63, ECF No. 348-2.) On August 11, 2009, Plaintiffs filed a complaint alleging violations of the RCRA and the Clean Water Act ("CWA"), 33 U.S.C. § 1365(b)(1)(A), and demanding, inter alia, that the court enjoin defendants to remediate contaminated sediments of the Raritan River and control any sources that may contribute to the sediment contamination. (ECF No. 1.) On March 26, 2010, the Honorable Joel A. Pisano ("Judge Pisano") dismissed the case on abstention grounds. (ECF No. 127.) On October 3, 2011, the Third Circuit reversed Judge Pisano's decision and remanded the case to this court. *Baykeeper v. NL Indus., Inc.*, 660 F.3d 686 (3d Cir. 2011).

### C.   Defendants' Motions to Dismiss and for Partial Stay

Thereafter, defendants again moved to dismiss the complaint. (ECF Nos. 183-89.) NL Defendants requested, in the alternative, a stay of the case. (ECF No. 188.) Plaintiffs opposed the motions to dismiss but agreed to stay the portion of their claims that related to the on-site redevelopers. (ECF No. 197.) On January 8, 2013, the court denied defendants' motions to dismiss. (ECF No. 233.)[2] In particular, the court denied defendants' challenge to Plaintiffs'

---

[2] On December 14, 2012, Plaintiffs filed an Amended Complaint. (ECF No. 221.) The amendments are not relevant to the motions sub judice.

standing, stating that "the relief Plaintiffs requested redresses their injuries" and that "[a]lthough the parties do not discuss the first two elements of standing, Plaintiffs have established that they suffered an injury in fact and that their injuries are fairly traceable to the contamination of the river, which NL allegedly contributed to or is contributing to." (Op. 35-36 n.9, ECF No. 233.)

### D.   Discovery

Fact discovery in this case closed on September 29, 2014. (ECF No. 292.) The parties exchanged documents during fact discovery but did not take depositions. Expert discovery closed on September 30, 2015. (ECF No. 337.) Plaintiffs submitted expert reports from: (1) Dr. George Flowers ("Dr. Flowers"), who opined on the metal content of waste generated by NL Industries (Pls.' Mot. for SJ on RCRA Claim, Ex. 68 ("Dr. Flowers's Report") 2, ECF No. 350-9); (2) Dr. Bruce Bell ("Dr. Bell"), who opined on "the contribution of contaminated process water and stormwater discharge from NL Industries, Inc.'s . . . former titanium pigment manufacturing facilities site, and stormwater runoff from the [Bridges] to the Raritan River" (Pls.' Mot. for SJ on RCRA Claim, Ex. 52 ("Dr. Bell's Report") 1, ECF No. 350-5); (3) Dr. Atul Salhotra ("Dr. Salhotra"), who opined on the exposure and risk to human receptors due to the contaminant concentrations in the sediments and water of the Raritan River (Pls.' Mot. for SJ on RCRA Claim, Ex. 117 ("Dr. Salhotra's Report") 1, ECF No. 350-14); and (4) Dr. William Rogers ("Dr. Rogers"), who opined on "the potential risk to ecological receptors from heavy metals found in the sediments of the Raritan River adjacent to the [NL Site]." (Pls.' Mot. for SJ on RCRA Claim, Ex. 121 ("Dr. Rogers's Report") 3-4, ECF No. 350-14).

NL Defendants submitted expert reports from: (1) Dr. Michael Johns, who opined on the risks to human health or to ecological receptors due to the concentration of contaminants in the sediment at the NL Site (Pls.' Mot. for SJ on RCRA Claim, Ex. 119 ("Dr. Johns's Report") 1,

6

ECF No. 350-14); (2) Dr. David E. Langseth, who opined on, inter alia, the sources of the contaminants in the sediment at the NL Site (Pls.' Opp'n Mot. for SJ on RCRA Claim, Ex. 97 ("Dr. Langseth's Report") 1, ECF No. 350-13); and (3) Dr. Paul D. Kuhlmeier, who opined on, inter alia, the sources of the contaminants in the sediment at the NL Site (Pls.' Opp'n Mot. for SJ on RCRA Claim, Ex. 132 ("Dr. Kuhlmeier's Report") 1, ECF No. 356-5). Following the close of expert discovery, Plaintiffs and Moving Defendants moved for summary judgment. (ECF Nos. 345-50.) NL Defendants also cross moved for summary judgment on the basis of lack of Article III standing. (ECF No. 364.)

## II.     Legal Standard

Federal Rule of Civil Procedure 56(a) provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable [fact finder] could return a verdict for the non-moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. While the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there

is a genuine [dispute] for trial." *Id.* at 250. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists, then the court must grant summary judgment. *Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Furthermore, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 209 (D.N.J. 2001).

"The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468 (D.N.J. 2002). "When ruling on cross-motions for summary judgment, the court must consider the motions independently . . . and view the evidence on each motion in the light most favorable to the party opposing the motion." *Id.* at 468-69 (internal citations omitted). "That one of the cross-motions is denied does not imply that the other must be granted." *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 85 F. Supp. 3d 785, 794 (D.N.J. 2015); *accord F.A.R. Liquidating Corp. v. Brownell*, 209 F.2d 375, 380 (3d Cir. 1954).

### III.   Analysis

As the Supreme Court declared in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, "[t]hose who do not possess Art. III standing may not litigate as suitors in the courts of the United States." 454 U.S. 464, 475-76 (1982). Accordingly, "[s]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005), *cert. denied*, 546 U.S. 872 (2005). Here, Plaintiffs and Moving Defendants move for summary judgment on the issue of standing.[3]

---

[3] NJDOT Defendants joined in NJTA Defendants' briefs in support of their motion for summary judgment. (ECF No. 346.)

### A. Judge Pisano's January 8, 2013 Decision on Standing

As an initial matter, in their motion to dismiss, NL Defendants argued that Plaintiffs lacked standing because the relief requested was not likely to redress their injuries. (NL's Mot. to Dismiss Moving Br. 12-21, ECF No. 189-1.) Judge Pisano rejected this argument noting that "a favorable decision granting injunctive relief . . . will require NL to remediate the river sediments, thereby removing contamination and paving the way for Plaintiffs to enjoy the river to a greater extent and increasing their profits by removing the stigma associated with the river." (Op., Jan. 8, 2013, 36.) Finding that this requested relief would redress Plaintiffs' alleged injuries, Judge Pisano held that Plaintiffs had satisfied the redressability prong of the standing inquiry. (*Id.*) In addition, Judge Pisano observed that "[a]lthough the parties do not discuss the first two elements of standing, Plaintiffs have established that they suffered an injury in fact and that their injuries are fairly traceable to the contamination of the river, which NL allegedly contributed to or is contributing to." (*Id.* at 35 n.9.)

In their motion sub judice, Plaintiffs cite Judge Pisano's January 8, 2013 Opinion and assert that "[t]his Court has already rejected defendants' challenges to plaintiffs' standing . . . ." (Pls.' Standing Moving Br. 12, ECF No. 348-1.) In their cross motion for summary judgment on standing, NL Defendants, however, argue that the court's "prior finding that the Plaintiffs had sufficiently pled standing so as to avoid dismissal is in no way determinative of the present cross-motions" because "Plaintiffs must carry their burden on standing at every stage of the litigation." (NL's Standing Cross Motion Br. 13-14 n.5, ECF No. 364-1.) The Court agrees with NL Defendants.

B.  **Traceability of Plaintiffs' Alleged Injuries**

To satisfy standing, Plaintiffs must show: "(1) [they] have suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). In their opposition to Plaintiffs' motion for summary judgment on standing, both NJTA Defendants and NL Defendants argue that Plaintiffs have failed to establish that Plaintiffs' alleged injuries are fairly traceable to their conduct. NJTA Defendants argue that they "hotly dispute[] [P]laintiffs' contentions that stormwater runoff from NJTA's Driscoll Bridge is the source of contamination of river sediments which allegedly contain arsenic, copper, lead, and zinc." (NJTA Opp'n Br. 7, ECF No. 359.) Likewise, NL Defendants assert that Plaintiffs' own expert, Dr. Flowers, testified that he could not opine as to whether any of the metals that are now present in the sediment at issue are attributable to waste from NL Industries' operations. (NL's Standing Cross Motion Br. 30, ECF No. 364-1.)

"The requirement that [a] plaintiff's injuries be 'fairly traceable' to . . . defendant's conduct does not mean that plaintiff[] . . . [must] prove causation with absolute scientific rigor to defeat a motion for summary judgment." *Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals*, 913 F.2d 64, 72 (3d Cir. 1990). "Plaintiff . . . need only show that there is a 'substantial likelihood' that defendant's conduct caused plaintiff['s] harm." *Id.* at 72 (quoting *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. at 59, 75 n.20 (1978))). To show there is a "substantial likelihood" that a defendant's conduct caused the subject harm in a CWA case, a plaintiff must show that a defendant has "[1] discharged some pollutant in concentrations greater

10

than allowed by its permit [;] [(2)] into a waterway in which the plaintiffs have an interest that is or may be adversely affect by the pollutant and that [(3)] this pollutant causes or contributes to the kinds of injuries alleged by the plaintiffs." *Powell Duffryn Terminals*, 913 F.2d at 72. Likewise in a RCRA case, a plaintiff's injuries must "relate directly" to defendant's site. *See Interfaith Cmty. Org. v. Honeywell, Inc.*, 399 F.3d 248, 257 (3d Cir. 2005).

1. Traceability with Respect to Bridge Defendants[4]

In their reply in support of their motion for summary judgment on standing, Plaintiffs note that NJTA Defendants rely on the same argument in challenging the traceability prong of standing as they do for arguing that they are entitled to summary judgment on the merits of Plaintiffs' RCRA claim. (Pls.' NJTA Standing Reply Br. 2, ECF No. 373.) Namely, NJTA Defendants argue that Plaintiffs have failed to present evidence showing that NJTA Defendants caused or contributed to the alleged contamination or that Plaintiffs' alleged injuries are traceable to the alleged contamination. (*Id.*) With respect to NJTA Defendants' alleged contribution to the contamination, the crux of the parties' dispute is whether Plaintiffs were required to sample the stormwater discharges from the Bridges, which are operated by the NJTA and NJDOT, to show that the Bridge Defendants contributed to the contamination. Plaintiffs do not dispute that they did not sample any stormwater discharged from the Bridges to establish that such stormwater contains the subject contaminants – arsenic, copper, lead and zinc. Plaintiffs argue, however, that such sampling was unnecessary because "it is undisputed that the discharges contain metals." (Pl.'s NJTA Standing

---

[4] As NJDOT Defendants joined in NJTA Defendants' briefs in support of their motion for summary judgment, *supra* n.3, the Court shall refer to NJDOT and NJTA Defendants collectively as "Bridge Defendants."

Reply Br. 4.) In support of this assertion, Plaintiffs rely on the following testimony from NJTA Defendants, NL Defendants, and their experts:

> (1) NJTA's stormwater expert, Dr. Ferrara, relied on literature showing that stormwater contains metals to calculate the amounts of arsenic, copper, lead and zinc discharged from the Driscoll Bridge;
> (2) NL's environmental engineering expert, Dr. David Langseth, opined, inter alia, that based on elevated levels of arsenic and zinc in soil samples located close to the Bridges, the bridges "may" have made some contributions to the contamination, and that "[f]rom the bridges' runoff, [he] would definitely expect copper, lead and zinc, because those are wear metals from vehicle traffic";
> (3) NL's expert on process engineering, Dr. Paul Kuhlmeier, opined, inter alia, it was "[m]ore likely than not, [the Bridges] contribute metals";
> (4) Plaintiffs' expert, Dr. Bruce A. Bell calculated annual quantities of arsenic, copper, lead and zinc discharged from the Bridges to the river based on data obtained from the Federal Highway Administration Highway Runoff Database. Dr. Bell, however, used a data set from Massachusetts to make this calculation.

(*See* Pls.' NJTA SJ Opp'n Br. 5-10, ECF No. 357.)

In addition to these expert opinions, Plaintiffs also cite the following documentary evidence to argue that the contamination is traceable to the Bridge Defendants' conduct: (1) January 27, 1999 correspondence from NL to NJDOT, stating that its consultant had opined "the element[s lead and arsenic] found in [the NJDOT's sampling of the NL Site] . . . derive from vehicle emissions on Route 35, channeled onto NL's property through [NJDOT's] improperly designed storm drains, and not from NL's activities" (Pls.' RCRA SJ Mot., Ex. 95, ECF No. 350-12); (2) July 2003 Supplemental Sediment Report, in which NL Defendants' consultants concluded that based on the spatial distribution of metals concentrations, the Garden State Parkway and Route 35, in addition to the North Ditch, were sources of impact of the sediment (Pls.' RCRA SJ Mot., Ex. 105 at 18, ECF No. 350-13); and (3) NJDOT's 1996 Evaluation of Highway Runoff Pollution

Control Devices, which stated, inter alia, that "[h]eavy metals commonly found in highway runoff include: lead, zinc, iron, copper, cadmium, chromium, and nickel." (Pls.' RCRA SJ Mot., Ex. 91 at B.2, ECF No. 350-12.)

Construing this evidence in the light most favorable to Plaintiffs, it arguably supports Plaintiffs' assertion that the stormwater discharge from the Bridges contain *some* metals and NJTA Defendants have not disputed this point. Indeed, NJTA Defendants obtained a CWA permit precisely because its stormwater discharge contains some metals. Plaintiffs, however, have not referenced any admissible evidence to show that the amount of metal contained in the stormwater discharge from the Bridges exceeds the amount that the Bridge Defendants are permitted to release. *See Powell Duffryn Terminals*, 913 F.2d at 72 (stating that to establish standing for CWA claim, plaintiff may show that defendant "discharged some pollutant in concentrations greater than allowed by its permit"). In addition, even assuming that Plaintiffs did show that the amount of metal discharged from the Bridges exceeds the permit levels, Plaintiffs have not offered any evidence to show that the excess metal settled in the sediment, as opposed to being carried to other points in the river.

As Plaintiffs have acknowledged, "the metals that adhere to sediment particles, may be suspended and redistributed in the river." (Pls.' Standing NL Reply Br. 15.) Thus, Plaintiffs have not shown that the contaminants in the sediment are traceable to the Bridge Defendants. *Cf. Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161-62 (4th Cir. 2000) (finding that plaintiffs satisfied the traceability requirement where they submitted toxicity tests that showed the defendants were discharging pollutants at levels that cause environmental degradation and evidence showing that defendants' discharge will travel 16.5 miles downstream). Moreover, even construing the facts in the light most favorable to Plaintiffs, on the current record,

a fact finder could not find that the alleged injuries were caused by contamination attributable to the Bridge Defendants "and not . . . the result [of] the independent action of some third party not before the [C]ourt." *Lujan*, 504 U.S. at 560-61. Having found that Plaintiffs have not shown or even offered sufficient proof for a reasonable fact finder to find that the contaminants in the sediment are traceable to Bridge Defendants, the Court denies Plaintiffs' motion for summary judgment on their Article III standing with respect to the Bridge Defendants and grants NJTA Defendants' motion for summary judgment.[5]

        2.       <u>Traceability with Respect to NL Defendants</u>

In contrast to Plaintiffs' unsupported assertions that the Bridge Defendants contributed to the contamination of the sediment, Plaintiffs have presented evidence tying the metals in the sediment to NL Defendants' conduct. Namely, Plaintiffs' evidence regarding the use of titanium as a "tracer" to determine whether metals in the sediment were attributable to NL Defendants suggests that the elevated levels of metal in the sediment are traceable to NL Defendants' production of titanium oxide. (Pls.' NL SJ Opp'n 40-41.) In addition, Plaintiffs rely on the NJDEP screening levels and on the reports and testimony of Drs. Salhotra and Rogers to argue that their concerns regarding the health risks and risks to the fish, birds, and other living species created by the elevated levels of metals in the sediment are reasonable. (*Id.* at 19-20.) Construing these facts in the light most favorable to Plaintiffs, the Court finds that a reasonable fact finder could find that Plaintiffs have shown that their alleged injuries are fairly traceable to NL Defendants' conduct. Accordingly, the Court denies NL Defendants' cross motion for summary judgment on Plaintiffs' lack of Article III standing. The Court, however, finds that genuine

---

[5] Having granted NJTA Defendants' motion for summary judgment, the court denies Bridge Defendants' motions to strike the expert reports of Plaintiffs' experts as moot. (ECF Nos. 381-383, 385.)

14

disputes of material fact preclude granting Plaintiffs' motion for summary judgment on Article III standing. Namely, the Court finds that the standing inquiry implicates the parties' disputes as to whether the 2000 and 2002 soil samples reflect the current level of contaminants in the soil, what weight should be afforded to the NJDEP's ecological screening criteria, and what risks there are to human health and ecological receptors. Construing all disputed facts in NL Defendants' favor, the Court is unable to determine from the current record whether Plaintiffs have satisfied the requirements for standing. Accordingly, the Court denies Plaintiffs' motion for summary judgment on Article III standing and shall hold an evidentiary hearing to resolve the genuine disputes of material fact relevant to the determination of Plaintiffs' standing. *Cf. Student Pub. Interest Research Grp. of N.J., Inc. v. P.D. Oil & Chem. Storage, Inc.*, 627 F. Supp. 1074, 1083 (D.N.J. 1986) (denying request for evidentiary hearing on standing where there were "no disputed issues of material fact relevant to the determination of plaintiffs' standing); *see also Doherty v. Rutgers Sch. of Law-Newark*, 651 F.2d 893, 898 n.6 (3d Cir. 1981) ("[T]o avoid an unnecessary trial, the district court may conduct a preliminary evidentiary hearing on standing.").

Finally, having found that genuine disputes of material fact preclude answering the threshold jurisdictional question of standing, the Court may not reach the merits of Plaintiffs' claims against NL Defendants. Accordingly, NL Defendants' motion for summary judgment and motions to preclude the expert testimony of Plaintiffs' experts are denied without prejudice.

### IV.   Conclusion

For the reasons set forth above, the Court grants NJTA Defendants' motion for summary judgment; denies Plaintiffs' motions for summary judgment; denies NL Defendants' motion for summary judgment; denies NL Defendants' cross motion for summary judgment on Article III standing; and denies NL Defendants' motions to preclude the expert testimony of Plaintiffs'

experts. The Court also denies as moot NJDOT's motion for summary judgment and Bridge Defendants' motions to strike the expert reports of Plaintiffs' experts. An order consistent with this Memorandum Opinion shall be issued.

                                          s/Michael A. Shipp
                                          **MICHAEL A. SHIPP**
                                          **UNITED STATES DISTRICT JUDGE**

**Dated:** July 29, 2016