**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RARITAN BAYKEEPER, INC., *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 09-4117 (MAS) (DEA) |
| NL INDUSTRIES, INC., *et al.*, | **MEMORANDUM OPINION** |
| Defendants. | |

**SHIPP, District Judge**

    This matter comes before the Court upon review of its docket. At the prompting of the Court, and otherwise, Plaintiffs Raritan Baykeeper, Inc., and Edison Wetlands Association, Inc. ("Plaintiffs") and Defendants NL Industries, Inc., and NL Environmental Management Services, Inc. ("Defendants," and, together with Plaintiffs, the "Parties") have submitted correspondence related to abstaining and staying trial in this matter. (*See, e.g.*, ECF Nos. 601, 603, 610, 611, 612, 613, 614, 615.) Most recently, Defendants moved for reconsideration of the Court's December 8, 2022, Order (ECF No. 616) declining an abstention stay. (ECF No. 617.) The Court held a status conference on January 26, 2023, providing an opportunity for the Parties to again present arguments on the validity of a stay—one not premised on abstention. (*See* ECF Nos. 630, 632.) The Court has carefully reviewed the Parties' submissions and considered the arguments presented at the January 26 status conference. The Court, using its inherent authority to control matters on its docket, finds a partial stay is warranted. The Court outlines its reasoning and the scope of the partial stay below.

I.      **BACKGROUND**

    A.      **Relevant Procedural History**

Trial was scheduled to begin in this matter on July 25, 2022.[1] (ECF Nos. 596, 597.) On June 22, 2022, Defendants sent correspondence to the Court requesting that the Court "hold a case management conference to discuss . . . a potential motion to either dismiss Plaintiffs' claims without prejudice or, alternatively, stay the litigation." ("Stay Request" 1, ECF No. 601.) Defendants requested this relief based on new developments from the New Jersey Department of Environmental Protection ("DEP") who sent correspondence to Defendants advising that it was time for them to proceed with remedial investigation pursuant to DEP regulations.[2] (*See generally* ECF No. 601-1.) Defendants retained a Licensed Site Remediation Professional ("LSRP") as required by the regulations and commenced the remedial investigation process. (Stay Request 1.) Defendants, therefore, maintained that the pending trial would be moot, at worst, and "wasteful and unnecessary," at best. (*Id.*)

Plaintiffs responded by arguing that the DEP's correspondence was no reason to delay the trial and did not render the case moot. (ECF No. 603 at 1, 7-8.) Plaintiffs painted Defendants' request as a delay tactic, arguing that Defendants could have collected data earlier but chose not to do so until the eve of trial. (*Id.* at 2.) Plaintiffs argued that staying the case would be inequitable and prejudicial because in December 2019, Defendants protested Plaintiffs' request to take additional samples, arguing that samples on the "eve of trial" would require additional expert

---

[1] Trial was originally scheduled for May 26, 2020, but due to the COVID-19 pandemic, it was adjourned. (*See* ECF Nos. 563, 564, 565.) The case was subsequently reopened on June 24, 2021. (ECF Nos. 573, 576.)

[2] The DEP previously indicated to Defendants that any investigation of the relevant sediments "would be futile, and should not occur, until after upgradient sources of contamination were first addressed." (Stay Request 1.)

analysis and delay of the trial date. (*Id.* at 2-3.) Plaintiffs ultimately requested that if the Court adjourned the trial date, that it also issue an Order regarding the remedial investigation that would include a schedule for the investigation, require progress reports from Defendants, and require rolling sampling data. (*Id.* at 8-9.)

In response, the Court issued an Order to Show Cause ("OTSC") regarding its jurisdiction over the matter. (*See generally* OTSC, ECF No. 607.) The OTSC required that the Parties "e-file correspondence regarding their positions on the Court's subject matter jurisdiction." (OTSC 3.) The Parties were permitted responses and replies. (*Id.*) The Parties were also permitted to "separately e-file correspondence regarding the propriety of a further stay of trial for the duration of the DEP-ordered remedial measures" if the arguments were different than those expressed in their initial correspondence. (*Id.*) The Court ordered that "[t]he trial is stayed pending an order from the Court *regarding its jurisdiction over this matter.*" (*Id.* (emphasis added).)

The Parties filed the correspondence ordered in the OTSC. (*See* ECF Nos. 610-615.) The Court issued an Order in early December (the "December Order") addressing two main issues: (1) whether the DEP action rendered the case moot; and (2) whether *Burford* abstention is appropriate. (*See generally* Dec. Order, ECF No. 616.) As to the first issue, the Court found that the DEP action and response from Defendants did not render the case moot, reasoning that the voluntary cessation doctrine had not been satisfied. (*Id.* at 2-3.) As to the second issue, the Court found that "an abstention stay is presently unnecessary," reasoning that "*Burford* abstention [is] improper even when a state agency has taken some action on the waste at issue." (*Id.* at 3-4 (quotation and citation omitted).) With these findings, the Court answered its original jurisdiction question outlined in the OTSC. (OTSC 3 (staying trial "pending an order from the Court regarding

3

its jurisdiction over this matter").) "Having assured itself of its jurisdiction," the Court scheduled trial to begin on March 13, 2023. (OTSC 4; Dec. Order 4.)

Soon after the December Order, Defendants moved for reconsideration of the denial of the stay. (*See* Recons. Moving Br., ECF No. 617-1.) In their motion, Defendants agreed with the December Order that the Court should retain jurisdiction over the matter, noting that their request for a stay "is [neither] premised on abstention, nor [were Defendants] asking th[e] Court to abstain from exercising jurisdiction." (*Id.* at 4 (quotation and citation omitted).) Defendants, specifically, requested that the Court stay the trial "to promote judicial and party economy." (*Id.*) Plaintiffs opposed, primarily arguing that Defendants did not meet the standard for reconsideration. (*See* ECF No. 620.) At a status conference on January 26, 2023, the Court again gave the parties an opportunity to present arguments on the validity of a stay. (*See* Status Conf., ECF Nos. 630, 632.) The Court subsequently denied the Motion for Reconsideration, determining that Defendants were unable to meet the standard. (ECF No. 634.)

### B.     Upcoming Trial

The trial is currently scheduled to begin on March 13, 2023. (Dec. Order 4.) Plaintiffs bring this action against Defendants under the Resource Conservation and Recovery Act ("RCRA") 42 U.S.C. § 6972(a)(1)(B). (Second Am. Compl. ¶ 2, ECF No. 221.) Section 6972(a)(1)(B) provides that: "any person may commence a civil action on his own behalf":

> against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment[.]

42 U.S.C. § 6972(a)(1)(B). Plaintiffs seek the following relief from the trial: (1) a judgment declaring that Defendants' contamination may present an imminent and substantial endangerment to human health and the environment; and (2) an injunction with multiple components, including a schedule for remedial investigation, financial assurances to guarantee that Defendants abate any endangerment, appointment of a Special Master to oversee the remedial investigation, an order for a clean-up remedy after the investigation (if necessary), and a schedule for any clean-up remedy. (ECF No. 611 at 7-8; Status Conf. (confirming this is the only relief Plaintiffs seek).)

## II.   LEGAL STANDARD

District courts retain broad discretionary powers to stay the matters before them. *See Bechtel Corp. v. Loc. 215, Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976). A district court's authority to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

When determining whether to exercise that authority, a court must consider: (1) whether the proposed stay, or denial thereof, will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date has been set; (3) whether the proposed stay, or denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) whether the proposed stay, or denial thereof, will reduce the burden of litigation on the parties and on the court. *OANDA Corp. v. GAIN Cap. Holdings, Inc.*, No. 20-5784, 2021 WL 1186778, at *2-3 (D.N.J. Mar. 30, 2021); *see also Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014).

## III. DISCUSSION

The Court first turns to the relevant stay factors to determine whether a stay is appropriate. The Court will then turn to the scope of the stay.

### A. A Stay Will Simplify the Issues in Question and Streamline Trial

The Court finds that a stay will simplify the issues in question and streamline the trial, therefore this factor weighs in favor of issuing a partial stay. The Court takes a practical approach in evaluating this factor: by comparing the relief Plaintiffs seek from trial with the output from the DEP remedial investigation. Plaintiffs seek a declaratory judgment as well as an injunction compelling a remedial investigation. (ECF No. 611 at 7; Status Conf. (confirming this is the only relief Plaintiffs seek).) The injunctive relief Plaintiffs seek is almost entirely parallel to the output of the DEP's remedial investigation. Examples are not hard to find. *First*, Plaintiffs want the Court to order a schedule for the remedial investigation. (ECF No. 611 at 8.) The DEP regulations provide a schedule for the remedial investigation as well as any necessary remediation. (*See, e.g.*, LSRP Decl. ¶¶ 5, 24, 26, 30, ECF No. 617-2.) *Second*, Plaintiffs want the Court to appoint a Special Master to oversee the remedial investigation. (ECF No. 611 at 8.) The DEP investigation is run by an LSRP who is a "remediation professional who 'step[s] into the shoes' of the [DEP] to oversee the investigation and, if necessary, remediation of sites . . . ." (LSRP Decl. ¶ 2.) *Third*, following the remedial investigation, Plaintiffs ultimately seek "a judicial determination that a cleanup remedy is necessary to abate the endangerment." (ECF No. 611 at 8.) Similarly, if the remedial investigation by the DEP determines that there is "contamination . . . that presents an unacceptable risk to human health or the environment, [Defendants] will be required to perform remediation work to address such risk." (LSRP Decl. ¶ 32.)

Because so much of the relief that Plaintiffs seek to gain from trial will already be provided by the DEP remedial investigation, a stay pending the DEP remedial investigation will necessarily simplify the issues and streamline trial. Importantly, the Court does not ignore the Third Circuit decision in this case (and others like it) that cautions—and mandates—against abstention stays particularly related to RCRA actions. *Raritan Baykeeper v. NL Indus.*, 660 F.3d 686 (3d Cir. 2011); *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 619 (7th Cir. 1998) (explaining that abstaining in favor of a state administrative action would be an "end run around RCRA"). The Court agrees that abstaining from RCRA actions based on state involvement would undermine the private right of action provided by RCRA. 42 U.S.C. § 6972(a)(1)(B). Similarly, issuing a stay pending a state court action whose resolution would have preclusive effects on the federal court would have the same effect. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr., Corp.*, 460 U.S. 1, 10, 27-28 (1983) (concluding that a district court abstains from a case when it stays litigation pending the results of parallel state proceedings because the state court's judgment will have preclusive effects in any future federal proceeding); *see also McMurray v. De Vink*, 27 F. App'x 88, 92 (3d Cir. 2002) (where the Third Circuit found that the district court erred in concluding that its stay of a case was not an abstention because the federal court was staying the case pending concurrent state litigation).

Here, the Court is not abstaining from the action. In fact, the Court recognizes that Plaintiffs seek additional relief apart from the requested injunctive relief. (*See, e.g.*, ECF No. 611 at 7 (stating that Plaintiffs are seeking a declaratory judgment that Defendants' "contamination of the sediments adjacent to the . . . [s]ite may present an imminent and substantial endangerment to human health and the environment.").) Plaintiffs' potential entitlement to this relief is not affected by the Court issuing the present partial stay. If Plaintiffs were entitled before the partial stay, they

7

remain entitled after the partial stay. The Court, furthermore, will remain updated on the remedial investigation conducted by the DEP, as outlined below. The Parties will also continue to litigate other issues, ripe for determination outside of trial, that the Court can rule on during the partial stay (see explanation below).

### B. Discovery is Complete and a Trial Date Has Been Set

On December 8, 2022, the Court set a trial date of March 13, 2023. (Dec. Order 4.) The Parties appear to dispute which samples should be taken and used for determining levels of contamination—particularly in light of the DEP's renewed involvement. (*See* Jan. 26 Trans., 8:16-10:5, ECF No. 632; *see also* Recons. Moving Br. at 13 ("[T]he [P]arties are essentially asking the Court to make a determination as to the relevance and sufficiency of the sampling data sets produced in 2000, 2002, 2008, 2011, and 2017. The sediment investigation will evaluate which of the existing data sets is sufficiently reliable to represent current sediment conditions and, if necessary, collect additional sampling data." (internal citation and quotation omitted))). The Court, nevertheless, recognizes that this factor weighs against issuing a stay.

### C. A Stay Will Not Unduly Prejudice Plaintiffs Nor Present a Clear Tactical Advantage for Defendants

This factor weighs in favor of issuing a stay and demands practical consideration. Because the relief Plaintiffs seek from trial overlaps substantially with the DEP's remedial investigation, undue prejudice to Plaintiffs is unlikely. Defendants are already compelled by the DEP and state regulations to perform the remedial investigation that Plaintiffs seek. (Recons. Moving Br. at 8-9.) Plaintiffs' own forecast of this litigation includes a two-phase approach that contemplates a phase one of trial for the remedial investigation to determine if a phase two of trial for any clean-up is necessary. (ECF No. 474 at 12:17-12:21; *see also* ECF No. 532 at 37-39.) This approach is not disrupted if the Court issues a partial stay.

Defendants also do not receive a clear tactical advantage if the Court issues a partial stay. Practically speaking, Defendants are still conducting the same remedial investigation that Plaintiffs' prevailing at trial would require. (*See* ECF No. 611 at 7.) If the DEP subsequently decides not to proceed with the remedial investigation or if Plaintiffs ultimately contend that the DEP's remedial investigation is flawed and they want a court-ordered investigation, a partial stay might prove to unnecessarily delay this case. The Court, however, finds the risk of these outcomes low. As an added layer of protection, the Court is only issuing a partial stay, which will enable the parties to litigate issues that do not require trial and will also allow the Court and the Parties to monitor the DEP remedial investigation to ensure the timeframe and reliability of the results are acceptable to the Court and the Parties.

**D.      A Stay Will Reduce the Burden of Litigation on the Parties and on the Court**

For many of the reasons the Court has already explained, the burden of litigation on both the Parties and the Court will be greatly reduced if the Court issues a stay. This factor, therefore, weighs in favor of issuing a stay. Much of the relief sought by Plaintiffs is duplicative of the DEP remedial investigation. The Court can both progress in the litigation (by issuing only a partial stay and focusing on remaining issues outside of trial) and provide assurances that the DEP remedial investigation is satisfactory while not expending unnecessary resources.

The Court and the Parties are intimately familiar with the tortured history of this case—a history that the Court has little interest in prolonging. That is no reason, however, to plow ahead contrary to reason and practical concerns. The Court will, thus, exercise its broad discretionary powers to control the disposition of the cases on its docket, and issue a partial stay in this matter and adjourn the upcoming trial.

### E. Scope of the Partial Stay

During the partial stay, the Parties will keep the Court apprised of the DEP remedial investigation. Defendants shall update the Court every four months regarding the remedial investigation including: (1) remedial investigation activities conducted during the reporting period; (2) submissions to the LSRP and/or DEP; and (3) planned work for the next reporting period. The Parties should also submit proposed remedial investigation schedules that forecast through the end of the DEP remedial investigation and position the Court for trial, including any additional proposed activities during the partial stay. (*See, e.g.*, ECF 614 9-10; *see also* ECF No. 603 at 8-9.)

During the partial stay, the Parties will continue to litigate matters that the Court can potentially resolve outside of trial. For example, the Court may be able to resolve several elements of the RCRA claim through summary adjudication. (*See, e.g.*, ECF No. 614 at 10 (listing two elements of RCRA that can be resolved through summary adjudication: (1) whether Defendant owned and operated a facility that transported, handled, and disposed of solid waste; and (2) whether Defendants contributed to sediment contamination).) The Court will issue a briefing schedule on these issues. The Parties should include any proposed issues for litigation outside of trial in their submission.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that a partial stay is warranted and adjourns the upcoming trial. An order consistent with this Memorandum Opinion will follow.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**
