<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RARITAN BAYKEEPER, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NL INDUSTRIES, INC., *et al.*, <br><br> Defendants. | Civil Action No. 09-4117 (MAS) (JTQ) <br><br> **MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court on two motions: (1) Plaintiffs Raritan Baykeeper, Inc. and Edison Wetlands Association, Inc.'s ("EWA") (collectively "Plaintiffs") motion for partial summary judgment in their favor (ECF No. 653) on two elements of their Resource Conservation and Recovery Act ("RCRA") claim; and (2) Defendants NL Industries, Inc. and NL Environmental Management Services, Inc.'s (collectively "NL" or "Defendants") motion for summary judgment on Plaintiffs' RCRA claim (ECF No. 654). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons outlined below, Defendants' motion for summary judgment is denied and Plaintiff's partial motion for summary judgment is granted.

**I.    BACKGROUND**

The Court recites only the uncontested facts necessary to contextualize the present motions. All other relevant or material facts in this matter are contested and will be recited where applicable in the Court's analysis below.

Defendants are corporations organized under the laws of New Jersey. (Pls.' Statement of Undisputed Material Facts ("PSUMF") ¶ 3, ECF No. 653-2; Defs.' Resp. to PSUMF ¶ 3 ("DRPSUMF"), ECF No. 656-1.) Defendants are the former owners of "approximately 440 acres of land on a peninsula on the southern shore of the Lower Raritan River [(the "Site")]." (PSUMF ¶ 5; see DRPSUMF ¶ 5.) Defendants acquired the Site in the 1930s, and "operated a titanium dioxide production facility" at the Site until 1982.[1] (PSUMF ¶¶ 6-7; see DRPSUMF ¶¶ 6-7.) Due to the production of titanium dioxide at the Site, the New Jersey Department of Environmental Protection (the "NJDEP") classified the Site as a "waste treatment, storage, and disposal . . . facility.[2]" (See PSUMF ¶ 8; DRPSUMF ¶ 8.)

During its use of the Site, Defendants discharged certain wastewater into the Raritan River through the "North Ditch[3]" of the Site and through a series of lagoons referred to as the "Tertiary Lagoons."[4] (See PSUMF ¶ 13; DRPSUMF ¶ 13.) To do so, Defendants obtained permits "to discharge . . . non-contact cooling water through" the North Ditch and the Tertiary Lagoons. (See DSUMF ¶¶ 28, 42; PRDSUMF ¶¶ 28, 42.) Defendants sought to treat the discharge "by neutralizing the acidity of its waste and separating solids from the effluent." (PSUMF ¶ 23;

---

[1] Titanium dioxide is "a [non-toxic] white pigment commonly used in paints, paper, and other commodities" such as food, toothpaste, soap, and cosmetics. (PSUMF ¶ 6; see DRPSUMF ¶ 6; Defs' Statement of Undisputed Material Facts ("DSUMF") ¶ 16, ECF No. 654-2; Pls.' Response to DSUMF ("PRDSUMF") ¶ 16, ECF No. 655-1.)

[2] The Site's classification as a waste treatment, storage, and disposal facility "meant that the Site was monitored and subject to regulatory oversight with respect to the storage and disposal of hazardous wastes." (DRPSUMF ¶ 8.)

[3] The "North Ditch" was located on the northwestern portion of the Site and is also referred to as Outfall 001. (See PSUMF ¶ 20; DRPSUMF ¶ 20.)

[4] A second outfall, known as the South Outfall or Outfall 002, was located on the southwestern portion of the Site, where it connected to the Tertiary Lagoons. (See PSUMF ¶ 20; DRPSUMF ¶ 20.)

DRPSUMF ¶ 23.) The details of this averred treatment, its effectiveness, and whether it successfully prevented the discharge of harmful solid waste from entering the Raritan River are heavily disputed. (*See generally* PSUMF; DRPSUMF.)

"Following [Defendants'] cessation of operations at [the Site] in 1982, [Defendants] began an environmental investigation of the property." (DSUMF ¶ 60; PRDSUMF ¶ 60.) Many years later in June 2000, in so investigating, Defendants sampled Raritan River sediments adjacent to the Site. (DSUMF ¶ 61; PRDSUMF ¶ 61.) The 2000 sampling "detected concentrations of arsenic, copper, lead, and zinc that were higher than NJDEP ecological screening level criteria in some locations." (DSUMF ¶ 62; PRDSUMF ¶ 62.) The higher levels of these metals were measured in depositional areas along the inner curve of the Raritan River. (DSUMF ¶ 63; PRDSUMF ¶ 63.) Also in 2000, Defendants sampled surface water in the Raritan River for arsenic and lead. (DSUMF ¶ 64; PRDSUMF ¶ 64.) "Neither arsenic nor lead was detected in the surface water adjacent to the [Site]" at that time. (DSUMF ¶ 65; PRDSUMF ¶ 65.)

In 2002, Defendants conducted additional sampling of Raritan River sediments. (DSUMF ¶ 66; PRDSUMF ¶ 66.) The 2002 sampling again "indicated concentrations of arsenic, copper, lead, and zinc above NJDEP ecological screening levels." (DSUMF ¶ 67; PRDSUMF ¶ 67.) This time in conducting sampling, Defendants also analyzed the relationship between the Tertiary Lagoons and the Raritan River. (*See* DSUMF ¶ 68; PRDSUMF ¶ 68.) The sampling found that in 2002, discharges from the Tertiary Lagoons through the South Ditch did not impact sediment or water quality. (DSUMF ¶ 69; PRDSUMF ¶ 69.)

In June 2004, the NJDEP reviewed Defendants' investigations and sampling and issued an opinion (the "2004 NJDEP Opinion"). (DSUMF ¶ 70; PRDSUMF ¶ 70.) In the 2004 NJDEP Opinion, the NJDEP concluded that additional investigations of the Site were not yet appropriate.

3

(DSUMF ¶ 71; PRDSUMF ¶ 71.) The NJDEP reasoned that any remedial efforts by Defendants would be of little ecological significance, and that a regional approach might be a better means of remediating the Raritan River. (DSUMF ¶¶ 72-73; PRDSUMF ¶¶ 72-73.) To this end, the NJDEP set out to investigate other "upgradient sources of metal contamination" before Defendants undertook any additional remedial action. (DSUMF ¶ 78; PRDSUMF ¶ 78.) These other "upgradient sources" included the Raritan Arsenal and the Horseshoe Road Superfund Site. (*See* DSUMF ¶¶ 51, 77-87; PRDSUMF ¶¶ 51, 77-87.)

Again in 2008 and 2011, further sampling was done. (*See* DSUMF ¶¶ 103, 107; PRDSUMF ¶¶ 103, 107.) Sampling done in 2011 showed that metal concentrations in sediments adjacent to the Site were lower than the concentrations identified in 2008. (*See* DSUMF ¶ 109; PRDSUMF ¶ 109.)

In 2022, the NJDEP informed Defendants that "conditions have changed," and Defendants would be "required to address contamination of the Raritan River" and retain a Licensed Site Remediation Professional ("LSRP") to perform remediation.[5] (PSUMF ¶ 36; DRPSUMF ¶ 36; *see* DSUMF ¶ 91; PRDSUMF ¶¶ 72, 91.) Defendants agreed to hire an LSRP and conduct such remediation if necessary. (DSUMF ¶¶ 92, 94; PRDSUMF ¶¶ 92, 94; PSUMF ¶ 37; DRPSUMF ¶ 37.) Remedial investigations are ongoing, and NL has submitted routine status reports to the Court regarding the status of these investigations. (*See, e.g.*, May 3, 2024 Status Report (articulating the current state of remediation after the motions for summary judgment were filed).)

In their most recent status report, Defendants represented that they submitted a Remedial Investigation Work Plan ("RIWP") to the NJDEP on March 29, 2024. (*Id.*; *see also* RIWP, ECF

---

[5] The NJDEP has yet to order remediation, however, and it is disputed to what extent Defendants, as opposed to upgradient sources, may be responsible for any alleged environmental harm. (*See* May 3, 2024 Status Report, ECF No. 662; *see generally* PSUMF; DRPSUMF.)

4

No. 662-1.) Defendants clarified, however, that "NL is not in a position at this time to indicate whether [the] NJDEP will deem any remedial action necessary, or in the event remedial action is necessary, when an approved remediation action plan may be in place." (May 3, 2024 Status Report.)

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure provide that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine disputes of material fact exist). "[U]nsupported allegations in . . . pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*,

912 F.2d 654, 657 (3d Cir. 1990). If the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

### III.   DISCUSSION

For the reasons outlined below, Defendants' motion for summary judgment is denied, and Plaintiffs' partial motion for summary judgment is granted.

The parties' cross-motions for summary judgment revolve solely around Plaintiffs' RCRA claim. Plaintiffs' RCRA claim arises specifically from the RCRA's "citizen suits" provision. 42 U.S.C. § 6972(a)(1)(B); (Second Am. Compl. ¶ 97, ECF No. 221). Under this statute, to establish liability, a plaintiff must prove three elements:

> (1) that the defendant is a person, including, but not limited to, one who was or is a generator or transporter of solid or hazardous waste or one who was or is an owner or operator of a solid or hazardous waste treatment, storage, or disposal facility; (2) that the defendant has contributed to or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste;

6

>and (3) that the solid or hazardous waste may present an imminent and substantial endangerment to health or the environment.

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 258 (3d Cir. 2005) (quoting *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1014-15 (11th Cir. 2004)).

Defendants seek summary judgment against Plaintiffs' RCRA claim in its entirety, while Plaintiffs seek partial summary judgment as to the first element and second element listed above. The Court articulates its findings on each motion in turn.

### A.     Defendants' Motion for Summary Judgment

First, summary judgment in Defendants' favor as to the RCRA claim is not appropriate. In arguing for summary judgment, Defendants raise two contentions: (1) that because Defendants are fulfilling their regulatory obligations and an LSRP is overseeing remediation, the injunctive relief Plaintiffs seek has been acquired (Defs.' Moving Br. 25-30, ECF No. 654-1); and (2) that Plaintiffs cannot connect NL's waste to any alleged endangerment, as required under the RCRA (*id.* at 30-39). Both contentions fail at this time.

#### 1.     *Injunctive Relief*

The Court agrees with Plaintiffs that Defendants' motion with respect to the continued applicability of injunctive relief is premature. (Pls.' Opp'n Br. 20-23, ECF No. 655.) It is true, as Defendants contend, that injunctive relief may be deemed to no longer be appropriate where active remediation is ongoing at a site. *See, e.g.*, *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139-40 (3d Cir. 2013) (affirming the district court's finding that where a remediation plan was ordered and underway, a mandatory injunction was no longer appropriate against that defendant); *Warren v. Matthey*, No. 15-1919, 2016 WL 215232, at *8 (E.D. Pa. Jan. 19, 2016) (finding, while relying on *Trinity*, that where the executive branch is overseeing remediation and adequate remedial steps are underway, injunctive relief is no longer appropriate). As Defendants

7

expressly recognize, however, remediation has not yet been deemed necessary by the NJDEP, and therefore, there is no remediation plan underway. (May 3, 2024 Status Report ("NL is not in a position at this time to indicate whether NJDEP will deem any remedial action necessary, or in the event a remedial action is necessary, when an approved remediation action plan may be in place."); *see also Trinity*, 735 F.3d at 140 (finding that a plan must be in place and be underway before the court can assess whether injunctive relief may still be appropriate and noting that even where a plan is underway, a plaintiff can still argue that a given "cleanup scheme [is] deficient or ineffective" in some way and still be entitled to seek injunctive relief). Instead, here, there has so far only been an RIWP submitted for approval to the NJDEP and no decision as to remediation has been issued by the NJDEP. (*See generally* RIWP.) Critically, as explained above, the distinction between a remedial investigation and an executive agency ordering remediation, which has since begun, is dispositive on this issue. Accordingly, Defendants' motion for summary judgment contending injunctive relief is no longer necessary in this action is premature, and therefore, such motion is denied.[6]

        2.     *Contribution under RCRA*

Defendants' remaining summary judgment contentions center around the second element of Plaintiffs' RCRA claim: contribution. To this end, Defendants' arguments rely heavily on the meaning of the word "which" in 42 U.S.C. § 6972. To be clear, Defendants view the second element, contribution, and the third element, imminent and substantial endangerment, as "inextricably intertwined" by the word "which" in the statutory language of 42 U.S.C. § 6972. (Defs.' Opp'n Br. 2, ECF No. 656.) As such, Defendants maintain, Plaintiffs' RCRA claim fails

---

[6] While the Court denies Defendants' summary judgment motion at this time, in the event the NJDEP orders remediation, the Court may ask the parties to submit further briefing on this issue

where the evidence cannot plausibly demonstrate "a causal relationship between [Defendants] and an imminent and substantial endangerment," because, by linguistic necessity, the second and third elements require one another to be met.[7] (*See* Defs.' Moving Br. 31.)

First, the word "which" that Defendants rely on for the supposition that the second and third elements are "inextricably intertwined" is absent from the Third Circuit's rule deriving from 42 U.S.C. § 6972. Specifically, the Third Circuit has interpreted 42 U.S.C. § 6972 as requiring three *distinct* elements, repeated below:

> (1) that the defendant is a person, including, but not limited to, one who was or is a generator or transporter of solid or hazardous waste or one who was or is an owner or operator of a solid or hazardous waste treatment, storage, or disposal facility; (2) that the defendant has contributed to or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; *and* (3) that the solid or hazardous waste may present an imminent and substantial endangerment to health or the environment.

*Interfaith Cmty.*, 399 F.3d at 258 (emphasis added) (citation omitted). Second, and crucially, "which" simply was adopted by the Third Circuit into the above "and" test. *See id.* Defendants' contention that the second and third elements are instead a single "inextricably intertwined" element merely seeks to contort an otherwise straightforward legal principle: namely, that the

---

[7] The Court also notes that Defendants cite no case law from any court in the Third Circuit to support their contention that "there must be 'a nexus' between the defendant and the waste causing the endangerment." (Defs.' Moving Br. 30-39 (quoting *Zands v. Nelson*, 797 F. Supp. 805, 810 (S.D. Cal. 1992).) Again, the Third Circuit's "and" test speaks for itself and there is no reason to redefine that which has been clearly set forth in this Circuit. Plaintiffs simply must establish each of the RCRA's three elements to prevail.

"and" test requires each *separate* delineated element to be met in order to succeed.[8] All told, in the end, the question for the Court is simple: can Plaintiffs provide evidence to meet their burden on the second and third elements of their RCRA claim? If so, their RCRA claim will survive Defendants' motion for summary judgment.

The second element, as set forth by the Third Circuit, requires only that a "defendant has contributed to or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste." *Id.* (citation omitted); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 188 F. Supp. 2d 486, 502 (D.N.J. 2002) (observing with respect to the contribution element that its "requirements are very broad and encompass practically any conduct relating to hazardous waste by practically any individual or entity"). Here, it is undisputed that Defendants contributed to the handling, storage, treatment, transportation, or disposal of hazardous waste. (*See* PSUMF ¶ 8; DRPSUMF ¶ 8 ("The . . . Site's classification as a [waste treatment, storage, and disposal] facility meant that the Site was monitored and subject to regulatory oversight with respect to the storage and disposal of hazardous wastes.").)

Moreover, to the extent Defendants seek instead to contend that there is no evidence that the waste they contributed caused an imminent and substantial endangerment, i.e., the third element of the Third Circuit's RCRA standard, this element is heavily contested as evident in the record. (*See, e.g.*, PSUMF ¶¶ 10, 11, 12, 14; Pls.' Opp'n Br. 6 n.3; May 9, 2017 Preliminary Evidentiary Hearing Tr. 131:14-132:14, 140:20-146:14, ECF No. 475; DSUMF ¶¶ 24-48, 125,

---

[8] The Court recognizes a need for causation in this context, i.e., that a plaintiff show that solid or hazardous waste that a defendant contributed itself caused an imminent and substantial endangerment. The Court, however, views this "causation" analysis as necessarily inferred from the word "and," and more naturally subsumed under the third element. The Court also finds that causation, no matter where it falls in the relevant test, is heavily contested. As such, the Court makes no findings as to causation in this Opinion.

130; May 12, 2017 Preliminary Evidentiary Hearing Tr. 48:10-50:6, ECF No. 478.) As such, under the language provided by the Third Circuit, and considering the remainder of Defendants' briefing on this issue, Defendants' motion for summary judgment is denied.

### B. Plaintiffs' Partial Motion for Summary Judgment

The Court briefly turns to Plaintiffs' cross-motion for summary judgment. Importantly, Plaintiffs do not move for summary judgment on all elements of their RCRA claim; Plaintiffs only move for summary judgment as to the first and second elements—personhood and contribution.

#### 1. Personhood

Plaintiffs first move for summary judgment in their favor on the first element of their RCRA claim, namely, whether Defendants are "persons" who either: (1) generated or transported solid or hazardous waste; or (2) "owne[d] or operat[ed] . . . a solid or hazardous waste treatment, storage, or disposal facility." (Pls.' Moving Br. 21-23, ECF No. 653-1); *Interfaith Cmty.*, 399 F.3d at 258. Importantly, that Defendants are "persons" under the RCRA and generated hazardous waste is not contested by Defendants. (Defs.' Opp'n Br. 29 n.3; DRPSUMF ¶ 8; *see* Final Pretrial Order 6, ECF No. 560 (stipulating that in producing titanium dioxide, Defendants generated, in part, "copperas", i.e., the iron that remained after the titanium was removed from the ilmenite).) As such, to the extent such claim needs the Court to affirmatively recognize what has already been stipulated, the Court grants Plaintiffs' motion for summary judgment on the first element of the RCRA.

#### 2. Contribution

For the same reasons the Court denied Defendants' motion for summary judgment as to contribution, Plaintiffs' motion is granted. To be clear, it is undisputed that Defendants contributed to the handling, storage, treatment, transportation, or disposal of hazardous waste. (*See* PSUMF

11

¶ 8; DRPSUMF ¶ 8 ("The . . . Site's classification as a [waste treatment, storage, and disposal] facility meant that the Site was monitored and subject to regulatory oversight with respect to the storage and disposal of hazardous wastes.").) The Court pauses to make clear, however, that it makes no finding whatsoever as to whether Defendants "contaminated" the Raritan River or sediment surrounding the Site when discharging waste, as Plaintiffs contend. (*See* Pl.'s Moving Br. 17-18.) Instead, the Court finds only, as the second element asks, that Defendants discharged hazardous wastes. Whether those hazardous wastes went untreated or otherwise contaminated sediment such that they might pose imminent and substantial endangerment to health or the environment—the third element of the test—is a question for the trier of fact.

## IV. CONCLUSION

For the reasons outlined above, Defendants' motion for summary judgment is denied, and Plaintiffs' partial motion for summary judgment is granted. The Court notes that given its findings in this Memorandum Opinion, only one question remains with respect to Plaintiffs' RCRA claim: whether solid or hazardous waste discharged by Defendants at the Site may present an imminent and substantial endangerment to health or the environment. This question will guide the remaining litigation with respect to Plaintiffs' RCRA claim.

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**